UNITED STATES of America,
Plaintiff–Appellant,

v.

Maximiliano SANCHEZ–ESCARENO, Adolpho Ayala Sanchez and David Garcia Lopez, Defendants–Appellees.

Nos. 90–2577, 90–2613 and 90–2614.

United States Court of Appeals,
Fifth Circuit.

Dec. 19, 1991.

Kathlyn Felton, Atty., Appellate Section, Crim. Div., U.S. Dept. of Justice, Washington, D.C., Paula C. Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellant.

Jose I. Gonzalez–Falla, Asst. Federal Public Defender, Roland Dahlin, II, Federal Public Defender, Thomas S. Berg, Daniel H. Wassamaker, Asst. Federal Public Defenders, Houston, Tex., for defendant-appellee.

Before POLITZ and HIGGINBOTHAM, Circuit Judges, and WINGATE,* District Judge.

WINGATE, District Judge:

The government here appeals the district court's dismissal of various criminal charges against the appellees on the ground of double jeopardy. Prior to the return of criminal indictments against the appellees, United States Customs officials had arrested appellees and assessed large civil fines against them for possessing marijuana and attempting to import same into the United States from Mexico. The assessed civil fines addressed the same con-

---

* District Judge of the Southern District of Mississippi, sitting by designation.

duct which was the basis of the subsequent criminal indictments.[1] Appellees acknowledged the civil fines by executing promissory notes. Everyone agrees that, if paid, these civil fines, punitive in amount and character, would constitute "punishment" under the Double Jeopardy Clause pursuant to *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Appellees have not paid the civil fines, nor has the government sought to collect on the promissory notes. Nevertheless, convinced that "punishment" was imposed upon appellees when they executed the promissory notes, the district court judge dismissed the criminal charges of possession of marijuana with intent to distribute and importation of marijuana. We are persuaded otherwise and reverse.

### I. Facts

Appellees Adolpho Ayala Sanchez, Maximiliano Sanchez–Escareno, and David Garcia Lopez were separately arrested, charged and assessed civil fines. Their cases are intertwined here on appeal because their cases are tied together by similar operative facts. These factual common denominators will be evident, as each appellee's trek to this court is charted.

### A. Adolpho Ayala Sanchez

On December 29, 1989, appellee Adolpho Ayala Sanchez was captured by United States Customs officials at the Rome, Texas, Port of Entry attempting to smuggle twenty-nine (29) pounds of marijuana into the United States from Mexico. Pursuant to a border search, the officials stopped appellee's car, searched it and found the marijuana in sealed cans inside the gas tank. Sanchez was immediately arrested, advised of his Miranda rights and subsequently incarcerated at the Port of Entry. There, agents with the United States Customs Service advised appellee that they were seizing his car and that he was personally subject to a civil penalty under 19 U.S.C. § 1497[2] for importation of undeclared articles. Appellee acknowledged the penalty by signing the following documents: An Agreement to Pay Monetary Penalty; Receipt for Merchandise Retained in Customs Custody and/or Notice of Fine, Penalty, and/or Seizure; Notice of Seizure and Information for Claimants, Form AF; Notice of Abandonment and Assent to Forfeiture of Prohibited or Seized Merchandise and Certificate of Destruction; and Notice of Expedited Judicial Forfeiture Procedures. Additionally, appellee was given a copy of a Notice of Penalty or Liquidated Damages Incurred and Demand for Payment.

Later, after appellee had been moved to the Starr County Jail, Customs officer Jimmy E. Green had appellee execute new forms which increased the assessed amount and which reflected a civil assessment under 19 U.S.C. § 1584[3] as opposed to the originally-stated statute of 19 U.S.C. § 1497. Supposedly, the government switched its reliance from § 1497 to § 1584 because of the department's policy change of assessing wholesale quantities of contraband under § 1584(a)(2), titled "Falsity or Lack of Manifest; Penalties." This statute authorizes the Customs Service to assess penalties whenever a person driving a vehicle enters the United States and refuses

---

1. No party disputes this point, apparently persuaded by the district court's thorough analysis on the matter.

2. Section 1497 provides in pertinent parts:
   (1) Any article which—
      (A) is not included in the declaration and entry as made; .... shall be subject to forfeiture and such person shall be liable for a penalty....
   (2) The amount of the penalty imposed under paragraph (1) with respect to any article is equal to—
      (A) if the article is a controlled substance, 1000 percent of the value of the article; ....

3. Section 1584 provides in pertinent parts:
   (1) Any master of any vessel and any person in charge of any vehicle bound to the United States who does not produce the manifest to the officer demanding the same shall be liable to a penalty of $1,000, and....
   (2) If any of such merchandise so found consists of smoking opium, opium prepared for smoking, or marihuana, the master of such vessel or person in charge of such vehicle ... shall be liable to a penalty of $500 for each ounce thereof so found.

to produce the manifest, or fails to include merchandise in the vehicle on the manifest. If the unreported item is marijuana, as it was here, the statute imposes a penalty of $500.00 an ounce. So, in this case, the penalty totaled $232,000.00.

The contents of two of the documents signed by appellee merit some attention.[4] The Agreement to Pay Monetary Penalty, the promissory note, contains the following language:

> Through execution of this agreement, I promise to pay to the United States Customs Service the amount still due and owing with regard to this penalty within 30 days of the date of this agreement. I recognize that failure to pay this penalty could result in detention of my person upon future entries into the United States or legal action against me by Customs to collect any unpaid amount. I also acknowledge that presentation of this document in any subsequent legal proceeding shall be *prima facie* evidence of this unpaid personal penalty.

In the Notice of Penalty or Liquidated Damages Incurred and Demand for Payment Document, we find the following statements:

> A personal penalty in the above-cited amount has been assessed against you, for violation of 19 USC 1584(a)(2).
>
> Payment of penalty does not compromise or settle any criminal violations; you may still be subject to criminal prosecution and may be judicially summoned for this purpose at a later time by the appropriate federal or state court.

At the base of the document, in smaller print, is the following advice:

> If you feel there are extenuating circumstances, you have the right to object to the above action. Your petition should explain why you should not be penalized for the cited violation. Write the petition as a letter or in legal form; submit in (duplicate) (triplicate), addressed to the Commissioner of Customs, and forward to the District Director of Customs at
>
> P.O. Box 3130, Laredo, Texas 78040–3130

Unless the amount herein demanded is paid or a petition for relief is filed with the District Director of Customs within 60 days from the date hereof, further action will be taken in connection with your bond or the matter will be referred to the United States Attorney.

Apparently, this latter provision has its source in 19 U.S.C. § 1618 which provides:[5]

> Whenever any person interested in any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of this chapter, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury if under the customs laws, and with the Commandant of the Coast Guard or the Commissioner of Customs, .... a petition for the remission of mitigation of such fine, penalty, or forfeiture, .... or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, [the Secretary of the Treasury or the Commissioner of Customs] may remit or mitigate the same upon such terms and conditions as he deems reasonable and just or order discontinuance of any prosecution relating thereto.

On January 23, 1990, the government obtained a four-count indictment against appellee for conspiracy to possess marijuana with intent to distribute it; conspiracy to import marijuana; importation of marijuana; and possession of marijuana with intent to distribute it pursuant to 21 U.S.C.

---

4. The other two documents primarily address appellee's rights relative to the seized automobile and confiscated marijuana and are not particularly germane to the issue before us on the civil penalty.

5. Further, 19 C.F.R. § 171.0 *et seq.*, (1991), provides the administratively promulgated rules for filing petitions for relief of fines, penalties, or forfeitures incurred under any law administered by United States Customs officials. These regulations govern several aspects of the petition for mitigation or remission of a fine including: to whom the petition should be addressed, the proper signature, the form of the petition and where and when the petition should be filed. *See generally* 19 C.F.R. § 171.0 *et seq.*, (1991).

§§ 846, 841(a)(1), 963, 952(a), and 18 U.S.C. § 2.

### B. Maximiliano Sanchez–Escareno

On January 28, 1990, at United States Customs Port of Entry at Hidalgo, Texas, appellee Maximiliano Sanchez–Escareno was arrested after his 1981 Ford pickup truck, fresh out of Mexico, was stopped, searched and unburdened of forty-four and one-half (44.5) pounds of marijuana found in the gas tank of the truck. Thereafter, appellee's experiences are a repeat of those encountered by appellee Adolpho Sanchez. Appellee Sanchez–Escareno was first assessed a civil penalty of $120,657 under 19 U.S.C. § 1497, which later was increased to $356,000 pursuant to 19 U.S.C. § 1584. This appellee signed similar documents as had Adolpho Sanchez, including an Agreement to Pay Monetary Penalty and Notice of Penalty or Liquidated Damages Incurred and Demand for Payment. Subsequently, appellee Sanchez–Escareno was indicted on the same four counts as had been Adolpho Sanchez.

### C. David Garcia Lopez

On February 10, 1990, appellee David Garcia Lopez was stopped at the United States Customs Service Port of Entry at Rio Grande City, Texas, where a search of his 1973 Ford pickup truck revealed eight (8) pounds of marijuana. The illegal drug was found secreted in a tool box in the bed of the truck. The officials assessed a fine of $64,000 by having Mr. Lopez sign an Agreement to Pay Monetary Penalty together with accompanying documents. The officials similarly erred by citing 19 U.S.C. § 1497 as the penalty statute; however, the government amended the documents and sought penalties pursuant to 19 U.S.C. § 1584. Following these transactions and similar to the events relative to Mr. Sanchez and Mr. Sanchez–Escareno,

the government obtained an indictment against Mr. Lopez for the same four counts.

### II. Double Jeopardy—Its Contours

In all three cases the district court judge dismissed the counts of importation of marijuana and possession of marijuana with intent to distribute based upon the principle of double jeopardy, even though none of the appellees had paid the civil penalties and even though the government had taken no steps towards collecting on the promissory notes. Our disagreement with the district court hinges on our contrary view of what "punishment" is under the Double Jeopardy Clause.

■ We begin our visit with this hoary rubric of law at a predictable landmark— the Fifth Amendment to the United States Constitution which births the doctrine. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." [6] This restraint on governmental power affords a trio of protections to the criminal defendant: protection against a second prosecution for the same offense after acquittal; protection against a second prosecution for the same offense after conviction; and protection against multiple punishment for the same offense imposed in a single proceeding. *Jones v. Thomas,* 491 U.S. 376, 380–81, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989); *Ohio v. Johnson,* 467 U.S. 493, 498, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2096, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The rationale undergirding these protections is that a sovereign, with all its power and re-

---

**6.** This prohibition was entrenched in English jurisprudence several hundred of years before its incorporation into the Fifth Amendment. At common law, there was no plea of double jeopardy as such, but common law knew four pleas in bar: autrefois acquit, autrefois convict, autrefois attaint, and former pardon. Autrefois acquit and autrefois convict prevented reprosecu-

tion after a verdict and multiple punishment as well. *See* Comment, *Twice in Jeopardy,* 75 Yale L.J. 262, 262 n. 1 (1965) (brief discussion of double jeopardy at common law); Comment, *Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee,* 65 Yale L.J. 338, 339–40 (1956) (historical background of double jeopardy rule).

sources, should not be permitted to subject a defendant to embarrassment, expense and ordeal by repeated attempts to convict for an alleged offense, *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), and that an accused should not be penalized more severely than the law provides, *Missouri v. Hunter*, 459 U.S. 359, 366–67, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983). Double jeopardy protection applies to felonies, minor crimes and misdemeanors alike. *Ex parte Lange*, 18 Wall. 163, 85 U.S. 163, 172, 21 L.Ed. 872 (1873). Criminal fines are treated in the same way as prison sentences for purposes of double jeopardy and multiple punishment analysis. *Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977), *rehearing denied*, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 164 (1977).

The issue before us does not concern the first two prongs of the Double Jeopardy Clause's reach; no one contends that here the defendants are being prosecuted again after a prior acquittal or conviction at an earlier trial. Rather, our issue implicates solely the third protective rung of the three-tiered Double Jeopardy Clause—whether the appellees are being exposed to multiple punishment.

■ Historically, the prohibition against multiple punishments was thought to arise only in criminal cases. *See, e.g., United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548–49, 63 S.Ct. 379, 386, 87 L.Ed. 443 (1943) ("the court.... emphasized the line between civil, remedial actions brought primarily to protect the government from financial loss and actions intended to authorize criminal punishment to vindicate public justice. Only the latter subject the defendant to 'jeopardy' within the constitutional meaning"); and scholarly articles mentioned in Note, *Civil Sanctions and the Double Jeopardy Clause*, 76 Va.L.Rev. 1251, 1251 n. 2 (1990). It was generally recognized that the government has both an established right to impose criminal punishment and to extract civil damages.

Hence, earlier cases noted this distinction and, for various reasons, refused to figure civil penalties into the double jeopardy equation, *see, e.g., Rex Trailer Company v. United States*, 350 U.S. 148, 150–51, 76 S.Ct. 219, 221, 100 L.Ed. 149 (1956) (recovery of penalty, civil in nature, did not violate Double Jeopardy Clause); *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938) (Congress may impose criminal and civil sanctions and since sanction imposed was civil, double jeopardy was inapplicable), although a few earlier cases had hinted that the recovery of a civil penalty following a criminal action might be punishment under the clause. *See e.g., Coffey v. United States*, 116 U.S. 436, 442, 6 S.Ct. 437, 440, 29 L.Ed. 684 (1886) (following prior acquittal, Double Jeopardy Clause precluded government's attempt to seek forfeiture), *overruled*, *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *United States v. Chouteau*, 102 U.S. 603, 610, 26 L.Ed. 246 (1880) (settlement in criminal proceeding was defense against recovery of penalty based on principle that former conviction barred action).

Then, the United States Supreme Court decided *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In *Halper* the Supreme Court expanded the embrace of multiple punishments protection by including within its grasp fines assessed in civil proceedings. The abbreviated facts of *Halper* are as follows: Irwin Halper, a manager of a company providing medical services to patients eligible for federal Medicare benefits, was convicted for submitting 65 false claims to the government for reimbursement in violation of the federal criminal false claims statute, 18 U.S.C. § 287. Halper was sentenced to two years in prison and fined $5,000. *Halper*, 109 S.Ct. at 1896. The government then brought an action in the United States District Court for the Southern District of New York against Halper pursuant to the civil False Claims Act, 31 U.S.C. §§ 3729–31,[7] for the same frauds. Applying the

---

7. This act is violated when:

[A] person not a member of an armed force of

facts from the criminal conviction to the civil case, the district court granted summary judgment for the government as to liability. *Halper,* 109 S.Ct. at 1896. It then appeared that Halper would be liable for a civil penalty of double the government's $585.00 loss, the costs of the action, and $130,000.00 ($2,000 for each of the 65 false claims).[8] The district court, however, concluded that the penalty under the False Claims Act additional to that imposed in the criminal conviction violated the Double Jeopardy Clause, declaring that "the total amount necessary to make the Government whole bears no rational relation to the $130,000 penalty the Government seeks." *United States v. Halper,* 660 F.Supp. 531, 533 (S.D.N.Y.1987). The United States Supreme Court agreed, holding that a defendant who has been punished in a criminal prosecution may not be subjected to an additional sanction, even though civil, when the civil sanction actually is punitive in character. Whether a penalty in any given situation is punitive in character, as opposed to being merely remedial depends upon the nature of the actual assessment. To assist courts in making this determination, the Court offered the following rule:

> The rule is one of reason: where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty

sought in fact constitutes a second punishment.

*Id.* at 1902.

In *Halper's* wake, the courts now are being called upon to scrutinize civil fines under the number of statutes which provide for civil penalties for conduct also the subject of criminal statutes[9] to determine under the *Halper* standard whether such fines be penal or remedial in nature. *See, e.g., United States v. Bizzell,* 921 F.2d 263, 267 (10th Cir.1990) (assessment of $30,000 against defendant in administrative proceeding rooted in defendant's alleged violations of Department of Housing and Urban Development regulations was not "punishment" within meaning of Double Jeopardy Clause, but remedial); *United States v. Mayers,* 897 F.2d 1126, 1127 (11th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 178, 112 L.Ed.2d 142 (1990) (assessment of $1,791,100 in civil penalties based upon same conduct as criminal proceedings in civil action for filing false medicare claims remanded to the district court for a *Halper* analysis); *United States v. Hall,* 730 F.Supp. 646, 655 (M.D.Pa.1990) (assessment of $1,035,000 civil penalty against defendant who had pled guilty to charge of transporting negotiable instruments out of the country without filing required currency reports remains subjected to *Halper* analysis); *United States v. United States Fishing Vessel Maylin,* 725 F.Supp. 1222, 1223 (S.D.Fla.1989) (civil forfeiture of claimant's boat after he was convicted of fish and game violations was remedial, as such compensated injury to government, and, thus, was not punishment under Double Jeopardy Clause).

---

the United States.... (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved. 31 U.S.C. § 3729.

**8.** *See* 31 U.S.C. §§ 3729–31. From 1863 until 1986, the civil False Claims Act provided that for each offense, a violator was "liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustained because of the act of that person, and costs of the civil action,...."

**9.** *See, e.g.,* The Internal Revenue Code, 26 U.S.C. § 7201 (1989) (civil and criminal penalties for willful evasion of taxes); *Cf.* False Claims Act, 18 U.S.C. § 287 (Supp.1991) (false, fictitious or fraudulent claim is crime) *with* False Claims Act, 31 U.S.C. § 3729(a) (1988) (false claim is fraud and statute provides for civil penalty); *Cf.* Insider Trading Sanctions Act of 1984, 15 U.S.C. § 78u–1(a), 78ff (Supp.1991) (civil treble damages assessment provisions and criminal prosecution provisions).

To resolve the narrow issue before us, we need not examine the civil fines levied against the appellees to ascertain whether the fines are remedial or penal. The government concedes here that these civil fines would constitute punishment, if paid, inasmuch as the government is unable to demonstrate a rational relationship between the fines and the government's costs.[10]

■ Furthermore, in approaching this dispute, we recognize that in *Halper* the civil penalty followed a criminal conviction, while in the instant case, the civil penalty precedes the criminal proceeding. We believe that the order of proceedings matters not to the analysis; the *Halper* principle that a civil penalty can be factored into the double jeopardy matrix should apply whether the civil penalty precedes or follows the criminal proceeding. *See United States v. Mayers*, 897 F.2d 1126, 1127 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 178, 112 L.Ed.2d 142 (1990) (order of proceedings, civil and criminal, does not effect double jeopardy application).

### III. Punishment

■ The government assessed the fines under 19 U.S.C. § 1584(a)(2). The appellees agreed to pay, signifying such by executing promissory notes. To date, the government has not sought to collect on the notes, nor has the government destroyed the notes, even though it says it is willing to do so. Obviously, the government is awaiting this ruling before it takes some action which could work to its detriment (if the notes constitute *Halper* punishment, a destruction of the notes would leave the government completely empty-handed). To date, the appellees have not paid any portion of these fines. Perhaps, they, too, are in pursuit of some stratagem (the government suggests that appellees do not wish to partially satisfy the debt because the appellees plan to move to set aside the debts later on various civil de-

fenses, including duress). So, since neither side has moved this controversy beyond the signing of the promissory notes, we are called upon to decide the narrow question whether this circumstance, appellees' execution of the promissory notes, constitutes "punishment" under the Double Jeopardy Clause.

The government argues that this circumstance does not constitute punishment. The government reasons that punishment would occur only upon payment by the appellees, or collection efforts by the government. The government champions the cases of *Ex parte Lange*, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1873), and *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943). In *Ex parte Lange*, the defendant was convicted of stealing mail bags, conviction of which carried a sentence of a one-year prison term *or* a $200 fine. The trial court, however, sentenced Lange to a $200 fine *and* one year in prison. Lange paid the fine and began serving his prison sentence when he sought a writ of habeas corpus from the trial court. The trial judge, realizing the error, vacated the judgment and resentenced Lange to one year in prison. The United States Supreme Court found that since Lange had "fully performed, completed, and endured one of the alternative punishments [payment of the $200 fine] which the law prescribed for that offence.... the court's power to punish for that offence was at an end,...." *Lange*, 85 U.S. at 176.

More recently, in *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943), a district court sentenced Bradley to pay a fine of $500 and sentenced him to six months in prison. *Id.* On October 1, Bradley's attorney paid the fine. Later that day, the court realized its sentence was erroneous and issued an order amending the sentence to omit the fine and instructed the clerk of court to return the $500 to Bradley. The United States Supreme Court, in finding a violation of the Double

---

**10.** *See* testimony of Customs Agent Ralph McCormick, 2 Sanchez at 19. The United States Customs Office arrived at the various fine amounts simply by multiplying the amount of

seized marijuana by $500, as dictated by 19 U.S.C. § 1584(a)(2), which provides for a $500 penalty for each ounce recovered.

Jeopardy Clause of the Fifth Amendment, stated:

> When, on October 1, the fine was paid to the clerk and receipted for by him, the petitioner had complied with a portion of the sentence which could lawfully have been imposed. As the judgment of the court was thus executed so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court was at an end. It is unimportant that the fine had not been covered into the treasury; it had been paid to the clerk, the officer of the United States authorized to receive it, and petitioner's rights did not depend upon what that officer subsequently did with the money.

*Bradley,* 318 U.S. at 52, 63 S.Ct. at 471. The government relies on these cases to support its argument that *payment* is the critical juncture where "punishment" is incurred for purposes of the Double Jeopardy Clause. The appellants argue that since no payment has been made on the notes and no proceedings have been used by the government to enforce the notes, the mere signing of a promissory note is not punishment. Accordingly, says the government, it may validly pursue a criminal prosecution.

The appellees suggest a contrary approach. The appellees contend that any reliance on *Ex parte Lange* or *In re Bradley* is misplaced. They indicate that "payment" is not the demarcation point for the attachment of punishment. Rather, the appellees contend that the execution alone of a promissory note exacts punishment for purposes of double jeopardy analysis. The appellees also cite to *Ex parte Lange* for support, finding comfort in the following language:

> The common law not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted.

*Lange,* 85 U.S. at 169. The appellees contend that the binding quality and enforceability of the signed promissory notes are tantamount to payment of the fines, and thus constitute punishment. Appellees conclude that since the government opted for a note which is binding and valid, the Double Jeopardy Clause prevents a second punishment by a criminal prosecution.

### IV. Holding

We find that appellees' execution of promissory notes, in the absence of a judgment or payment by appellees, does not constitute "punishment" under the Double Jeopardy Clause, neither in the ordinary nomenclature associated with the word, nor pursuant to an analysis of various cases which have addressed the multiple-punishment issue.

In *Brown v. Wilemon,* 139 F.2d 730 (5th Cir.1944), *cert. denied,* 322 U.S. 748, 64 S.Ct. 1151, 88 L.Ed. 1579 (1944), in a lawsuit between gasoline retail dealers and the Office of the Price Administration, where for various infractions the retail dealers were suspended by the Price Administrator from dealing in gasoline for a period of two weeks, the retail dealers applied to the district court for an injunction on the grounds that legislative power was being exercised in imposing punishments and penalties not authorized by Congress. *Id.* at 731. The district court granted the injunction, holding that the suspension order was punitive and not remedial, that Congress had vested no power in the President and his agencies to fix punishments or to adjudge them. *Id.* We reversed the district court and along the way had this to say about "punishment":

> Punishment or penalty in America consists in taking life, liberty, or property. A suspension order takes neither. The dealer's personal liberty is untouched. Nothing that is really his is taken from him. His filling station is unmolested and may be used to sell things other than gasolene, and to service cars. Even his gasolene is not taken from him. He is prohibited for a brief period from distributing it or from getting any more. There is damage by the interruption of his business, but damnum absque injuria. His private interest has merely come into

collision with a public interest, and has had to yield.

*Brown,* 139 F.2d at 732.

Similar conclusions may be drawn relative to the matter before us. The government has not yet attempted to take anything from the defendants, nor to deprive them of their liberty. Their property and liberty are as yet unmolested and free from the exercise of sovereign power. Appellees are but presumed to be personally obligated to the government, the holder thereof, unless and until they interpose a defense sufficient to relieve them of the obligations. *Seale v. Nichols,* 505 S.W.2d 251, 254 (Tex.1974) (person signing note is presumed obligated to holder unless sufficient defenses).

■ Appellees anticipated retort that meanwhile, as signors of the notes, they are detrimented, and that such should be construed as "punishment" is easily met by the realization that under the Double Jeopardy Clause all detriments do not constitute "punishment." *See, e.g., United States v. Bizzell,* 921 F.2d 263, 267 (10th Cir.1990) (defendants' debarment in administrative proceedings from participation in Department of Housing and Urban Development housing programs did not constitute "punishment" for purposes of Double Jeopardy Clause); *United States v. Hartley,* 612 F.2d 1009, 1010 (5th Cir.1980) (Defense Department's temporary suspension of defendant from contracting with Department not "punishment" within scope of Double Jeopardy Clause).

Furthermore, in *U.S. v. Halper, supra,* the Court cautioned against construing "punishment" from the perspective of a defendant. The Court observed:

This is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment. *See, e.g., United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943).

Rather, we hold merely that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction that must be evaluated.

*Halper,* 109 S.Ct. at 1901 n. 7. The purpose served by having appellees execute the promissory notes upon their arrest and pursuant to a civil statute was but to obtain evidence of their indebtedness, albeit prima facie evidence. The notes did not constitute any actual payment or actual satisfaction whatsoever. The content of the promissory notes even anticipate the need for future legal action to enforce their terms.[11] Further, in the Notice of Penalty or Liquidated Damages Incurred and Demand for Payment Document, the appellees were advised of a possible procedure for side-stepping the payments of these assessments. *Halper* tells us that "... a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goal of punishment." *Halper,* 109 S.Ct. at 1902. How, then, can it be said that the government's attempt to confirm evidence of debt in a circumstance where the government contemplates the possibility of further court action and where the government advises the defendant of an available procedural mechanism for relief from the notes is one which serves the goal of punishment?

■ In our search for a definition of punishment, we must remember that "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Here, the government has yet to subject the defendants to trial at all or to exact any form of punishment whatsoever. Defendants are presently in the same position as someone who has been charged in two criminal proceedings, but has not yet been tried or

---

**11.** The notes state: "I also acknowledge that presentation of this document in any subsequent legal proceeding shall be *prima facie* evidence of this unpaid personal penalty."

punished in either. If the defendants actually pay the civil fines, then any subsequent criminal prosecution would be double jeopardy. *See Ex parte Lange,* 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1873) (when defendant "fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone"). Likewise, if the government chooses to go forward with its prosecution of the defendants, jeopardy would attach when the jury is empaneled and sworn, as it would in any criminal case. *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). Finally, if the government attempts to collect on the notes, jeopardy would attach when the court begins to hear evidence in that action. *See id.* But at this point, defendants' contentions under the Double Jeopardy Clause are misplaced. Accordingly, the judgments of the district court dismissing the indictments are REVERSED.