**UNITED STATES of America, Appellee,**

v.

**Arthur R. ANDREWS, Appellant.**

Nos. 97–3035, 97–3036.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 23, 1997.

Decided June 26, 1998.

L. Barrett Boss, Assistant Federal Public Defender, argued the cause for appellants, with whom A.J. Kramer, Federal Public Defender, and Joseph R. Conte, appointed by the court, were on the briefs.

Barbara J. Valliere, Assistant U.S. Attorney, argued the cause for appellee, with whom Mary Lou Leary, U.S. Attorney, John R. Fisher and Harry R. Benner, Assistant U.S. Attorneys, were on the brief. Elizabeth Trosman, Assistant U.S. Attorney, entered an appearance.

Before: WILLIAMS, ROGERS and GARLAND, Circuit Judges.

GARLAND, Circuit Judge:

Appellants are the chief executive officer and president of a corporation against which the Securities and Exchange Commission (SEC) secured a civil monetary penalty in 1995. In 1996, a grand jury indicted appellants for essentially the same conduct. Appellants contend that the SEC penalty constitutes a punishment that bars their subsequent criminal prosecution under the Double Jeopardy Clause of the Fifth Amendment. We disagree. Whether or not such a penalty would implicate the Clause if imposed on appellants, we hold that the penalty imposed on the corporation constitutes neither a punishment of appellants, nor a sufficiently choate "attempt to punish" the appellants, to implicate their constitutional rights. Accordingly, we do not reach the question whether the SEC penalty would constitute a criminal punishment for double jeopardy purposes under the test the Supreme Court recently announced in *Hudson v. United States*, —— U.S. ——, 118 S.Ct. 488, 139 L.Ed.2d 450

(1997), which replaced the test previously employed in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

## I

Appellant Arthur Andrews is the chief executive officer, and appellant Thomas Green is the president, of Fulcrum Holding Co., Inc., a District of Columbia corporation. Andrews is Fulcrum's sole shareholder. According to the SEC, in 1994 Fulcrum offered prospective investors an opportunity to purchase "prime bank bills of exchange," which it promised would yield a return of at least 50% by the end of one year. One such investor was Bayport Holdings, Ltd., which in May 1994 wired Fulcrum $1.5 million for the purchase of prime bank bills. Instead of using the money to buy an investment for Bayport, however, the SEC contends that Fulcrum and its principals used the money for a variety of unrelated purposes, including the purchase of personal automobiles and jewelry, and the payment of personal hotel bills. Moreover, Fulcrum allegedly sent Bayport back some of Bayport's own money, misrepresenting it as profit on the trading of prime bank bills, in order to lull Bayport into believing that Fulcrum had made the promised investment.

On October 31, 1994, the SEC filed a civil complaint against Fulcrum and Andrews, charging that the prime bank bills scheme violated the antifraud provisions of the securities laws. The complaint did not name appellant Green. It sought injunctive relief, disgorgement of the proceeds of the illegal conduct, and civil penalties, against both Fulcrum and Andrews.[1]

On February 10, 1995, the SEC moved for summary judgment solely against Fulcrum. The district court granted the motion, and ordered Fulcrum to pay Bayport disgorgement in the amount of $1.5 million and to pay the SEC a civil penalty in the amount of $500,000. In response to Fulcrum's representation that it had filed for protection un-

---

**1.** The complaint charged violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. It sought civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

der the Bankruptcy Code, the district court suspended Fulcrum's obligation to pay the disgorgement and penalty amounts pending further order.

On June 1, 1995, the SEC moved for partial summary judgment against Andrews, requesting injunctive relief and disgorgement, but expressly not seeking civil penalties from him. *See* Mem. in Supp. of Mot. for Partial Summ. J. at 1 n.1, 12. The district court's final judgment, entered on July 31, 1995, granted the SEC's request for injunctive relief, and held Fulcrum and Andrews jointly and severally liable for the payment of $1.5 million in disgorgement to Bayport (plus pre- and post-judgment interest). The court noted that the SEC had filed a status report indicating it no longer was seeking civil penalties from Andrews. Accordingly, the court ordered Fulcrum alone to pay the $500,000 civil penalty to the SEC.

On April 30, 1996, a grand jury in the District of Columbia indicted appellants for essentially the same conduct at issue in the civil suit, charging criminal violations of the federal mail fraud, wire fraud, and money laundering statutes.[2] Appellants moved to dismiss the indictment on double jeopardy grounds, arguing that the $500,000 penalty imposed on Fulcrum constituted prior punishment under the test employed in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); that the punishment was imposed for the same offense as that charged in the indictment under the test employed in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); and that the punishment imposed on Fulcrum was effectively a punishment of its officers, Andrews and Green.

The district court denied appellants' motion. The court did not consider whether the civil penalty constituted punishment under *Halper*, or whether the offenses were the same under *Blockburger*. Instead, the court

held the Double Jeopardy Clause inapplicable because "[t]he prohibition against multiple punishments does not attach until a punishment is imposed," and because the judge in the SEC action had imposed the civil penalty only against Fulcrum and not against Andrews or Green. Andrews and Green immediately appealed the denial of their motion to dismiss.

## II

■ We must first consider whether we have jurisdiction to hear this interlocutory appeal. Under the final-judgment rule, we ordinarily do not have jurisdiction to hear a defendant's appeal in a criminal case prior to conviction and sentencing. *See generally* 28 U.S.C. § 1291. In *Abney v. United States*, however, the Supreme Court held that a pretrial denial of a motion to dismiss an indictment on double jeopardy grounds was immediately appealable under the " 'collateral order' exception to the final-judgment rule." 431 U.S. 651, 657, 659–62, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Noting that the Double Jeopardy Clause "is a guarantee against being twice put to trial for the same offense," the Court held that this aspect "of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken." *Id.* at 661, 97 S.Ct. 2034.

*Abney* involved the Double Jeopardy Clause's protection against successive prosecution. But the Supreme Court has held the Clause to have two prongs: it protects not only against "successive prosecution," but also against "successive punishment." *Witte v. United States*, 515 U.S. 389, 395–96, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). *See also United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 2139, 135 L.Ed.2d 549 (1996) (quoting *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)).[3] Appellants here do not allege a

---

2. The indictment charged violations of 18 U.S.C. §§ 2, 1341, 1343, 1956, 1957.

3. The Court has described the successive prosecution prong as protecting against two more distinct abuses: "a second prosecution for the same offense after acquittal [and] a second prosecution for the same offense after conviction."

*North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The prohibition against successive prosecution protects against a third distinct abuse as well: even without acquittal or conviction, this prong bars a second prosecution for the same offense if the first prosecution is dismissed after jeopardy has attached, *see Crist v. Bretz*, 437 U.S. 28, 35, 98

violation of the successive prosecution prong; instead they charge that the government is seeking to impose a second punishment.

It might be argued that a claim brought under the successive punishment prong does not require an interlocutory appeal for its vindication. If appellants ultimately are acquitted, they will not have been punished twice; if they are convicted, a court can vacate the second punishment on appeal. *Abney* itself seemed to give support to such an argument, for it noted that the protection against double punishments, unlike the guarantee against being twice put to trial, "can be fully vindicated on an appeal following final judgment." 431 U.S. at 660, 97 S.Ct. 2034.

■ This line of argument, however, was foreclosed by the Court's subsequent opinion in *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). There, the Court permitted an interlocutory appeal alleging that a pending prosecution on cocaine charges was barred by the successive punishment prong because the conduct at issue had already been taken into account in defendant's sentencing for a prior marijuana conviction. The Court held that the defendant's successive punishment claim was ripe for review, although he had not yet been convicted or sentenced on the cocaine charges, because the Clause protected not just against "more than one punishment for the same offense" but also against *"an attempt* to secure that punishment in more than one trial." 515 U.S. at 397, 115 S.Ct. 2199 (emphasis added). Accordingly, multiple punishment claims, like multiple prosecution claims, are appropriate subjects for interlocutory appeal. *See United States v. Perez–Herrera,* 86 F.3d 161, 163 (10th Cir. 1996); *United States v. Baird,* 63 F.3d 1213, 1215 & n. 4 (3d Cir.1995); *United States v. Woods,* 949 F.2d 175, 177 n. 1 (5th Cir.1991).[4]

■ But that does not end the matter. A defendant cannot obtain interlocutory review of a motion to dismiss an indictment simply by characterizing his claim as one involving double jeopardy. If that were the rule, defendants could disrupt their trials at will, pending the resolution of appeals. Instead, the Supreme Court held in *Richardson v. United States* that a claim of double jeopardy must be at least "colorable" to confer interlocutory jurisdiction on an appellate court. 468 U.S. 317, 322, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). The standard is a lenient one. Indeed, the Court made clear just how lenient the standard was in *Abney* itself where, although it found jurisdiction to hear the defendant's interlocutory appeal, it disposed of defendant's argument on the merits in a single paragraph. *See* 431 U.S. at 664–65, 97 S.Ct. 2034.

Even under this lenient standard, however, we cannot describe Green's claim as colorable. He and Andrews contend that the civil penalty imposed on Fulcrum was effectively a prior punishment imposed on Fulcrum's officers. They claim that the district court in the SEC civil litigation found Fulcrum to be a mere sham, that that finding makes Fulcrum's corporate form void, "not merely voidable," and that as corporate officers they therefore are liable for the judgment.

■ This novel claim must clear a number of logical hurdles before it can prevail—hurdles which we explore in Part III below with respect to Andrews. But whatever this argument's general difficulties, as applied to Green it fails at the start. As the face of the pleadings makes clear, Green was never a party to the SEC civil suit. The complaint did not name him as a defendant; indeed, it did not mention him at all.

■ The constitutional protection against double jeopardy is "intrinsically personal." *Department of Revenue v. Kurth Ranch,* 511

S.Ct. 2156, 57 L.Ed.2d 24 (1978), where the dismissal was not caused by "manifest necessity," *see United States v. DiFrancesco,* 449 U.S. 117, 130, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

**4.** Many other courts have assumed without discussion that multiple punishment claims may be appealed before final judgment. *See United States v. Reyes,* 87 F.3d 676, 678 (5th Cir.1996);

*United States v. Salinas,* 65 F.3d 551 (6th Cir. 1995); *United States v. Morgan,* 51 F.3d 1105, 1109–10 (2d Cir.1995); *United States v. Louisville Edible Oil Prods., Inc.,* 926 F.2d 584 (6th Cir.1991). *But cf. United States v. Stoller,* 78 F.3d 710, 714–15 (1st Cir.1996) (noting that, prior to *Witte,* the First Circuit had held *Abney* inapplicable to multiple punishment claims).

U.S. 767, 779, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (quoting *H\lper*, 490 U.S. at 447, 109 S.Ct. 1892). A defendant cannot invoke it to prevent his punishment on the ground that another already has been punished. *See United States v. Louisville Edible Oil Prods., Inc.*, 926 F.2d 584, 586 (6th Cir.1991) (rejecting claim that punishment of Subchapter S corporation constituted punishment of employees paid on the basis of the corporation's profits); *Woods*, 949 F.2d at 177 & n. 3 (action against corporation does not constitute punishment of its sole shareholder). As the Supreme Court said in *United States v. MacDonald*, "a double jeopardy claim ... requires at least a colorable showing that a defendant once before has been in jeopardy...." 435 U.S. 850, 862, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). Moreover, "[w]ithout risk of a determination of guilt, jeopardy does not attach...." *Serfass v. United States*, 420 U.S. 377, 391–92, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975).

Green has never been in that position. He owns no stock in Fulcrum. He neither has been held liable for any monetary penalty, nor has he ever been party to a proceeding in which he was at risk of being held liable for the penalty imposed on Fulcrum. Indeed, defense counsel conceded at oral argument, and the government did not dispute, that Green was not and cannot be bound by the judgment in the SEC action against Fulcrum.[5] At a minimum, some additional proceeding will be necessary before the corporation's penalty can be imposed on Green—assuming, without deciding, that such a penalty could be imposed on him at all. He thus is in no more difficult a position than that of a yet-unindicted grand jury subject who watches his confederate proceed to trial. He may be apprehensive about his own fate, but until he himself goes to trial he cannot claim to have been placed in jeopardy. *See generally United States v. Gartner*, 93 F.3d 633, 635 (9th Cir.1996) (no double jeopardy where defendant was not jointly and severally liable

for civil penalty assessed in prior proceeding); *Baird*, 63 F.3d at 1219 (because defendant never became a party to forfeiture proceeding, he never was placed in jeopardy); *United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.1994) (same).

It is a "fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass*, 420 U.S. at 393, 95 S.Ct. 1055. Because Green never has "suffered jeopardy," his claim of double jeopardy is not colorable. Accordingly, we dismiss his appeal for lack of jurisdiction.

■ Andrews presents a more complicated story. Unlike Green, the SEC did file a civil complaint against him and did, at least initially, seek the imposition of a civil penalty against him. Moreover, as the sole shareholder and chief executive officer of Fulcrum, he is not an unlikely target for liability through piercing of the corporate veil, and the SEC action has at least increased the chance that one day he will be held liable. Hence, even if punishment has not yet been imposed, we cannot dismiss as non-colorable the possibility that it has been attempted in the *Witte* sense. Given the lenient standard employed by the Supreme Court for finding interlocutory jurisdiction, we must proceed to the merits of Andrews' claims.

### III

As already noted, the Supreme Court has held the Double Jeopardy Clause to possess two prongs, protecting against both multiple prosecutions and multiple punishments. In *Halper*, the Supreme Court held that the protection against multiple punishments was triggered where a civil sanction was so "overwhelmingly disproportionate" to the damages the defendant caused that it could not "fairly be characterized as remedial, but only as a deterrent or retribution." 490 U.S. at 449, 109 S.Ct. 1892.

Invoking *Halper*'s formulation of the protection against multiple punishments, An-

---

**5.** As the Supreme Court stated in *Martin v. Wilks*, "[i]t is a principle of general application ... that one is not bound by a judgment in personam in litigation in which he is not designated as a party." 490 U.S. 755, 761, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (internal citation and quota-

tions omitted), *superseded by statute on other grounds. See* 18 CHARLES A. WRIGHT, ET AL, FEDERAL PRACTICE AND PROCEDURE § 4449, at 411 (1981). Appellants do not suggest that any of the limited exceptions to this general rule would apply here. *See Martin*, 490 U.S. at 761 n. 2, 109 S.Ct. 2180.

drews argues that the civil money penalty imposed on Fulcrum constituted punishment for his allegedly fraudulent activities relating to Bayport and that the Double Jeopardy Clause therefore bars his criminal prosecution. Apparently because of our decision in *SEC v. Bilzerian,* 29 F.3d 689, 696 (D.C.Cir. 1994), holding that under *Halper* disgorgement of ill-gotten gains in an action brought by the SEC is remedial rather than punitive, Andrews does not argue that the disgorgement remedy here was punitive. Instead, he argues that because the money penalty was exacted on top of disgorgement, the punitive nature of that penalty is manifest.

Like the district court, we do not determine whether the SEC civil money penalty constituted a prior criminal punishment, or whether under *Blockburger* it covered the same offenses as the indictment. Our consideration of the prior punishment issue would be particularly problematic at this stage, since after this court heard oral argument, the Supreme Court issued its opinion in *Hudson v. United States,* —— U.S. ——, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). There, the Court disavowed *Halper's* conclusion that punishment, rather than *criminal* punishment, could trigger the Double Jeopardy Clause. —— U.S. at ——–——, 118 S.Ct. at 493–94. To determine whether criminal punishment was at issue, the Court focused not just on whether a prior penalty was proportional to a victim's injury, but rather on the multi-factor test it previously had employed in *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), and *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *See* —— U.S. at ——, ——–——, 118 S.Ct. at 491, 493–96. Although there are striking similarities between the sanctions the Office of Comptroller of the Currency imposed in *Hudson,* which the Court declined to characterize as criminal, and the SEC civil money penalty sought in this case,[6] that issue was never briefed in this court and we are loath to proceed without the views of the parties.

In any event, we find no need to consider the *Hudson/Halper* or *Blockburger* issues because we find that Andrews—like Green— suffered no prior jeopardy, and hence could not have suffered double jeopardy. The district court reached this conclusion by finding that no punishment had yet been imposed on Andrews. We agree that no punishment has yet been imposed although, as noted in Part IV *infra,* we are not certain that necessarily disposes of the issue.

■ Andrews has two arguments in support of the claim that he already has been punished. His first requires three steps: (1) the district court in the SEC litigation "has already" found Fulcrum "to be merely a cloak for fraud"; (2) therefore, the corporate form is void, "not merely voidable"; and (3) therefore, the judgment imposed on Fulcrum "immediately became a liability of the defendants." *See* Appellants' Br. at 6, 10, 12.[7] We need not examine the validity of the second and third steps, because the premise is factually incorrect. The district court did not find that Fulcrum was a sham. To the contrary, the court paid obeisance to the corporate form, accepting Fulcrum's representation that it had filed for bankruptcy protection and suspending payment of the judgment pending further proceedings. Indeed, the court made virtually no findings at all. Because Fulcrum refused to answer the complaint, citing purported Fifth Amendment concerns, the district court treated the SEC's allegations as conceded and entered judgment accordingly.

---

**6.** *See SEC v. Palmisano,* 135 F.3d 860, 865–66 (2d Cir.1998) (applying *Hudson's* analysis to hold that SEC civil monetary penalties are not criminally punitive).

**7.** Andrews does not argue that a sole or controlling shareholder of a bona fide corporation would be punished for double jeopardy purposes if punishment were imposed upon his corporation. Such an argument was rejected by the Fifth Circuit in *Woods,* on the ground that "[a]b- sent individual liability, there [is] no claim for double jeopardy." 949 F.2d at 177 n. 3. A similar argument made on behalf of employees of a Subchapter S (26 U.S.C. § 1361 *et seq.*) corporation was rejected by the Sixth Circuit in *Louisville Edible Oil Products,* on the ground that the theory would extend protection from prosecution to any individual who receives income on a percentage-of-profit basis from any entity if the entity were punished. *See* 926 F.2d at 586.

But, Andrews contends, because the SEC had alleged that Fulcrum was merely a cloak for the fraudulent activities of its officers, the court effectively adopted that allegation by treating it as conceded. Again, Andrews' problem is with his factual premise. The SEC did not allege, as Andrews asserts, that Fulcrum was merely a "fraudulent enterprise aimed at wealthy investors." Appellants' Br. at 12. That quotation leaves out some important words from the SEC's original sentence—which is found not in the complaint but in an SEC memorandum in support of temporary relief. The full sentence alleges that Fulcrum *"embarked on* a fraudulent enterprise aimed at wealthy investors." Pl. Mem. in Supp. of Temp. Relief at 2 (emphasis added). That plainly is not an allegation about what Fulcrum *was*, but about what it *did*. The difference between being a fraud and conducting one is important. Even a fully-capitalized, Fortune 500 corporation can embark on a fraud, but that would not make its corporate form a sham or its shareholders personally liable.

■ Andrews' second argument in support of the notion that he has been punished is that even if the government has never sought to pierce the corporate veil, "in this jurisdiction" he has as much right to pierce it as the government does. For this proposition, Andrews cites our opinion in *Quinn v. Butz,* 510 F.2d 743 (D.C.Cir.1975).

This argument suffers from a number of significant flaws. Although *Quinn* does hold that penetration of the corporate veil can be urged against as well as by the government, we emphasized there that "the ultimate principle is one permitting its use to avoid injustice." 510 F.2d at 759. Avoiding "injustice" is not the same as avoiding indictment. The injustice Andrews claims here is that, *unless* the veil is pierced, he will be subject to double jeopardy. In fact, Andrews has the point backwards. Even on his own theory, he will confront the possibility of double jeopardy only *if* the veil is pierced. If it is not,

he will not be liable for Fulcrum's penalty and hence will not have been subjected to prior jeopardy.

■ Moreover, Andrews' asserted right to pierce the veil runs counter to the rule that piercing the corporate veil is an equitable remedy, whose exercise is subject to the sound discretion of the trial judge. *See Valley Fin., Inc. v. United States,* 629 F.2d 162, 171–72 (D.C.Cir.1980); *see also Kinney Shoe Corp. v. Polan,* 939 F.2d 209, 211 (4th Cir. 1991). In *Quinn,* for example, the court entertained the possibility of piercing against the government only because it feared the corporate form may have operated at an "innocent party's expense." 510 F.2d at 758. But if Fulcrum is a sham, it is because Andrews, as its sole shareholder and chief executive officer, made it one in order to facilitate his fraudulent scheme. Under such circumstances, Andrews cannot don the mantle of an innocent party in order to pierce the cloak of his own fraud.

Finally, even if *Quinn* applied here, the veil would at best be "pierce-able"; it has not yet been "pierced." *See Quinn,* 510 F.2d at 760 (petitioner entitled "to an opportunity to show that the company was not in truth a corporation"). Nor is Andrews quite so eager to pierce the veil as his briefs would suggest. At oral argument, the court asked Andrews' counsel whether his client actually concedes that Fulcrum was a sham. Counsel demurred. He was not, he said, authorized to make such a concession. But in the context of Andrews' argument, this is not a concession—it is a cornerstone. Andrews, apparently, would like to have his cake and eat it too: he would like to pierce the veil for the purpose of dismissing the present indictment, but preserve it as a defense in case the SEC ever does try to collect. We reject this argument and conclude that no criminal punishment has yet been imposed on appellant Andrews.[8]

---

**8.** Because Andrews cannot even establish that the civil judgment imposed any obligation upon him, we need not consider whether a judgment alone would have been enough to constitute the imposition of punishment where the penalty has not only not yet been paid, but has been suspend-

ed pending bankruptcy proceedings. *Cf. United States v. Sanchez–Escareno,* 950 F.2d 193, 201 (5th Cir.1991) (holding that an unpaid judgment does not constitute punishment, even where the defendant executes a promissory note to pay it).

## IV

Andrews' brief states his agreement with the "undisputed proposition, that a punishment must be imposed in the first proceeding before jeopardy can attach." Appellants' Br. at 13. As discussed in Part III, if Andrews is correct about this proposition, then his appeal must fail because no punishment has yet been imposed upon him.

We are not certain, however, that Andrews is correct. After all, we have *Witte's* admonition that the Double Jeopardy Clause protects not just against multiple punishments, but against multiple *attempts* to punish. *See Witte*, 515 U.S. at 396, 115 S.Ct. 2199; *see also Kansas v. Hendricks,* — U.S. —, —, 117 S.Ct. 2072, 2085, 138 L.Ed.2d 501 (1997) (citing *Witte*). Indeed, in *Hudson*, the Court not only repeated this admonition, it used it to support its conclusion that *Halper* had applied the wrong analysis. *Halper* had directed courts to look at the "sanction actually imposed" in order to determine whether it was so disproportionate as to be punitive. The consequence of this direction, the *Hudson* Court said, was that it would "not be possible to determine whether the Double Jeopardy Clause is violated until a defendant has proceeded through a trial to judgment." — U.S. at —, 118 S.Ct. at 495. But that, the Court charged, "flies in the face of the notion that the Double Jeopardy Clause forbids the government from even attempting a second time to punish criminally." *Id.* (internal quotations and citations omitted).

We need not linger over this problem because not only was no punishment imposed upon Andrews, none was attempted—at least not in any constitutional sense. For purposes of the multiple prosecutions prong of the Double Jeopardy Clause, an attempt does not attain constitutional significance until jeopardy has attached. *See Serfass*, 420 U.S. at 390–92, 95 S.Ct. 1055. This accords with the language of the Clause itself, which bars neither "attempts" nor "prosecutions," but rather prohibits being "twice put in jeopardy" for the same offense. In a criminal trial, jeopardy does not attach until a jury is empaneled and sworn or, in a non-jury trial, until the court begins to hear evidence. *See id.* at 388, 95 S.Ct. 1055. The underlying principle is that "jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'" *Id.* (citation omitted).

Although the Supreme Court has not had occasion to consider when jeopardy might attach outside the context of a criminal trial, or whether the timing of attachment is different for the multiple punishments prong as compared to the multiple prosecutions prong, no court has concluded that attachment in such circumstances should come any earlier than it would in a criminal trial. To the contrary, some courts have held it to come at an analogous time,[9] while others have found it to come considerably later.[10]

---

**9.** *See Torres,* 28 F.3d at 1465 (jeopardy attaches in civil forfeiture hearing when evidence is first presented to trier of fact); *cf. Sanchez–Escareno,* 950 F.2d at 201 (jeopardy attaches in action to collect on notes when court begins to hear evidence).

After *Hudson* there is further reason to conclude that courts should treat criminal trials and other proceedings that may lead to double jeopardy in a similar way. The holding of *Hudson,* after all, was not that the *sanction* imposed was civil rather than criminal, but that the prior "administrative *proceedings* were civil, not criminal." — U.S. at —, 118 S.Ct. at 491 (emphasis added). *See also id.* at 496 n. 6 (favorably citing *Kurth Ranch,* 511 U.S. at 781, 114 S.Ct. 1937, for focusing on whether the alleged punishment was "the functional equivalent of a successive criminal prosecution"). Hence, the "attempting a second time to punish criminally" proscription may not be a subsidiary element of

the multiple punishments prong, but rather a more generalized restatement of the multiple prosecutions prong: that is, double jeopardy protects against multiple punishments, and against multiple attempts to impose criminal punishments—regardless whether such attempts occur in the form of criminal trials or other kinds of proceedings. *See also Witte,* 515 U.S. at 396, 115 S.Ct. 2199 (appearing to equate "attempting a second time to punish criminally" with "being twice put in jeopardy for such punishment"). If the "attempts" proscription is just a restatement of the multiple prosecutions prong, then there would be good reason to apply as similar as possible "attachment" rules regardless whether the attempt occurs in a criminal trial or otherwise.

**10.** *See, e.g., United States v. Tamez,* 881 F.Supp. 460, 465–66 (E.D.Wash.1995) (jeopardy does not attach in civil forfeiture proceedings until final

There are two stages of the civil SEC proceedings that one might loosely characterize as "attempts" to impose punishment here. But even if we were to apply an analogy to the attachment of jeopardy in a criminal trial, neither was sufficiently advanced to constitute attachment.

The first possible "attempt" was the filing of the SEC's complaint, which named Andrews and sought penalties from him. The closest criminal trial analogy would be to an indictment. But the filing of an indictment does not create jeopardy. As we have noted, a jury must be empaneled or a judge must begin to hear evidence on the charge before attachment occurs. *See Serfass,* 420 U.S. at 388–89, 95 S.Ct. 1055. Neither happened here. Evidently awakening—somewhat belatedly, but still in time—to the possibility that it was creating a *"Halper"* problem for future criminal prosecutors, the SEC withdrew its request for civil penalties against Andrews before it ever presented evidence in support of that request.

Alternatively, one might characterize the judgment against Fulcrum as an initial step in an "attempt" to hold Andrews personally responsible for the monetary penalty. But this step has not put Andrews at personal risk of paying that penalty. Because the SEC civil action ended in a final judgment that did not include a penalty against Andrews, a new proceeding would still be required before the SEC could collect anything from him. A complaint in that new proceeding, and further action on that complaint, would thus be the earliest stage at which jeopardy could attach. *Cf. United States v. Sanchez–Escareno,* 950 F.2d 193, 203 (5th Cir.1991) (although defendants executed promissory notes in acknowledgment of punitive civil fines, jeopardy would not attach until government tried to collect on notes and "court begins to hear evidence in that action").

In sum, we conclude that even were an "attempts" analysis appropriate here, the SEC action simply did not progress sufficiently against Andrews to constitute an attempt to impose criminal punishment for purposes of the Double Jeopardy Clause.

## V

We dismiss Green's appeal for lack of jurisdiction because it does not present a colorable claim of double jeopardy. Andrews' appeal, while colorable, fails on the merits, and we therefore affirm the district court's denial of his motion to dismiss the indictment.

judgment is entered), *aff'd,* 95 F.3d 1160 (9th Cir.1996) (table); *United States v. Polichemi,* 1995 WL 387833 (N.D.Ill.1995) (prohibition against multiple punishments does not attach in SEC civil action until civil penalty is imposed); *cf. United States v. Von Moos,* 660 F.2d 748, 749 (9th Cir.1981) (jeopardy on multiple punishments claim involving multiple sentences does not attach until defendant begins serving sentence).