**Ex parte Curtis Ray WARD.**

Nos. 420–96, 421–96.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 21, 1998.

Robert G. Turner, Houston, for appellant.

Steve Greene, Asst. Dist. Atty., Anahuac, Matthew Paul, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

HOLLAND, Judge, delivered the opinion of the Court, in which McCORMICK, Presiding Judge, and MANSFIELD, KELLER and PRICE, Judges, joined.

Appellant was indicted for possession of more than fifty but less than two hundred pounds of marihuana and, in a separate indictment, possession of marihuana on which no tax had been paid. TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon 1992); TEX. TAX CODE ANN. § 159.201 (Vernon 1992). Prior to indictment, the Comptroller of Public Accounts sent appellant a notice of taxes due. Appellant made a $250 payment, and then filed a plea in bar and a pre-trial application for writ of habeas corpus contending the Double Jeopardy Clause of the United States Constitution barred his prosecution for aggravated possession. The trial court denied relief. On appeal, the court of appeals affirmed the decision of the trial court. *Ward v. State*, 870 S.W.2d 659 (Tex.App.— Houston [1st Dist.] 1994, pet ref'd) ("Ward I"). After appellant's petition for discretionary review was refused by this Court, the United States Supreme Court vacated the judgment of the Court of Appeals and remanded the case for further consideration in light of its decision in *Montana Dept. of Revenue v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). On remand, the Court of Appeals reversed its original holding and granted a writ of habeas corpus. *Ward v. State*, 915 S.W.2d 941 (Tex. App.—Houston [1st Dist.] 1996) ("Ward II"). This Court granted the State's petition for discretionary review to determine: (1) whether jeopardy attaches when the Texas tax on controlled substances is assessed but no judicial action has been taken to enforce the tax assessment; and (2) whether possession of marihuana and the tax on controlled substances are the same offense for double jeopardy purposes.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

### A. Factual Background

On February 13, 1992, Chambers County authorities arrested appellant during a traffic stop after discovering seventy-eight pounds of marihuana in a locked tool box. Officers also seized $2,165 in cash and a radar detector. The State filed a motion for summary judgment seeking forfeiture of the cash and radar detector seized. Appellant did not contest the motion, and in July 1992, the trial court granted the motion and ordered the $2,165 and radar detector forfeited to the State of Texas.

The State indicted appellant for possession of more than fifty but less than two hundred pounds of marihuana, and possession of marihuana on which no tax had been paid. After indictment, the Comptroller of Public Accounts sent appellant a notice informing him that he owed $109,546.50 in taxes, together with a $10,954.65 penalty for failure to pay tax on the marihuana. *See* TEX. TAX CODE ANN. § 159.101 (Vernon 1992).[1] On March 18, 1992, the Comptroller issued a state tax lien in the amount of $120,501.15. The lien was properly filed pursuant to § 113.001 and

---

1. Unless otherwise indicated, all code citations refer to Vernon's Texas Codes Annotated, Tax Code as amended through the 1997 supplement.

§ 113.002. In a writ of habeas corpus appellant asserted the civil forfeitures and tax assessment were punitive in nature and a subsequent criminal prosecution for the underlying felony possession charge placed him in danger of a second punishment for the same offense in violation of the Double Jeopardy Clause. The trial court denied appellant's writ of habeas corpus. Appellant sought an appeal from the trial court's decision.

## B. *Ward I*

On appeal, the First District Court of Appeals initially held that the "assessment" of the tax was not "punishment" for jeopardy purposes and further prosecution would not violate the Double Jeopardy Clause. *Ward I*, 870 S.W.2d at 662. The court cited two reasons for its holding. First, the court emphasized that appellant had only been "assessed" the tax. The State had not sought a judgment against appellant, and there had been no adjudication by a court. The court of appeals explained appellant's reliance on *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) was misplaced, because *Halper* contemplated a criminal prosecution and a civil action resulting in a judgment. *Ward I*, 870 S.W.2d at 662. Secondly, the appellate court noted the absence of appellant's payment of the tax "in full or substantial part" and reasoned that appellant's $250 payment on the total assessment was so insignificant (1/480) as to not constitute a 'payment' on the tax due. The appellate court recognized that because appellant was not "punished" the trial court's denial of relief was proper.

This Court refused appellant's petition for discretionary review. Appellant then filed a writ of certiorari to the United States Supreme Court. The United States Supreme Court vacated the judgment in *Ward I* and remanded the case for further consideration in light of its decision in *Kurth Ranch*. *Ward v. Texas*, 513 U.S. 1011, 115 S.Ct. 567, 130 L.Ed.2d 485 (1994).

## C. *Ward II*

Without addressing the authority cited in *Ward I*, the court of appeals reversed its original decision.[2] *Ward II*, 915 S.W.2d at 947. In *Ward II* the court of appeals began by examining the Texas tax. The appellate court concluded that because the Texas tax was similar to the Montana tax in *Kurth Ranch* in many respects, the Texas tax on controlled substance tax was a "punishment for purposes of double jeopardy considerations". The appellate court determined that it was the actual "assessment" of the tax which constituted 'punishment.' *Id.* at 946. To support this conclusion, the court of appeals quoted the Supreme Court's holding in *Kurth Ranch* that Montana's effort to collect a tax on the possession of drugs was the "functional equivalent of a successive criminal prosecution for the same offense." The *Ward II* court concluded that "based on this language, the assessment of a tax on the possession of marihuana in this case precludes subsequent prosecution for that offense."

By way of a footnote, the appellate court added it was irrelevant that the assessment preceded the criminal prosecution, quoting Justice Scalia's dissenting opinion in *Kurth Ranch*, wherein he observed, "[i]f there is a constitutional prohibition on multiple punishments, the order of punishment cannot possibly make any difference." *Ward II*, 915 S.W.2d at 947 n. 8 (quoting *Kurth Ranch*, 511 U.S. at 804, 114 S.Ct. at 1958, 128 L.Ed.2d at 794). Based on this conclusion, the appellate court held jeopardy barred appellant's criminal prosecution for possession the moment the tax on possession was "assessed." Recognizing appellant was entitled to relief under *Kurth Ranch*, the court of

**2.** The failure to address the authorities discussed in *Ward I* suggests that the appellate court interpreted the Supreme Court's order remanding the case back for consideration in light of its decision in *Kurth Ranch*, as a declaration that its original conclusion was faulty. However, such an interpretation is unsound since the Supreme Court did not address the merits of the case.

When a lower court does not have the benefit of a recent Supreme Court decision and the decision has potential to affect the lower court's disposition of a case, the Supreme Court's policy is to remand the case for consideration under the new authority. The remand is not an implicit comment on the merits of the case, but ensures the appropriate law is applied.

appeals reversed the trial court's decision with instructions to dismiss the pending criminal indictments. *See Ward II,* 915 S.W.2d at 947. The State sought review of this decision. This Court now reverses the judgment of the court of appeals.

### D. *Hudson v. United States*

Recently, the Supreme Court handed down its decision in *Hudson v. United States,* —— U.S. ——, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), in which it disavowed the analysis applied in *U.S. v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) to determine whether a civil sanction is a "punishment" for purposes of the Double Jeopardy Clause of the Fifth Amendment. In *Hudson,* the Office of the Comptroller of the Currency (OCC) imposed monetary penalties and occupational debarments on the defendants for violating federal banking statutes. The defendants were subsequently indicted for violations resting on the same lending transactions that formed the basis for the prior administrative actions brought by the OCC. The defendants moved to dismiss the indictment under the Double Jeopardy Clause of the Fifth Amendment. The District Court ultimately dismissed the indictments, but the Court of Appeals reversed. Relying on *United States v. Halper,* the Court of Appeals held the proven damages to the Government were not so grossly disproportional as to render the sanctions "punishment" for double jeopardy purposes. *Hudson,* —— U.S. at ——, 118 S.Ct. at 492.

Before addressing the issues presented in *Hudson,* the Supreme Court specifically recognized in its opinion that certiorari was granted because of the Courts "concern about the wide variety of novel double jeopardy claims spawned in wake of *Halper." Hudson,* —— U.S. at ——, 118 S.Ct. at 498. The Court reiterated that the Double Jeopardy Clause states that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." The Court explained that it has "long recognized that the Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, 'in common parlance,'" be described as punishment. It emphasized, however, that the "Clause protects only against the imposition of multiple criminal punishments for the same offense ... and then only when such occurs in successive proceedings." *Hudson,* —— U.S. at ——, 118 S.Ct. at 493.

Citing the double jeopardy analysis for multiple punishments pre-*Halper,* the Court set out the proper inquiry for determining whether a civil penalty constitutes "punishment" for purposes of double jeopardy:

> Whether a particular punishment is criminal or civil is, at least initially a matter of statutory construction. *Helvering [v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed 917] 339 (1938 ). A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *[United States v.] Ward,* 448 U.S. [242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980) ]. Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," *id.,* at 248–249, [100 S.Ct. at 2641] as to "transform what was clearly intended as a civil remedy into a criminal penalty," *Rex Trailer Co. v. United States,* 350 U.S. 148, 154, 76 S.Ct. 219, [222–223] 100 L.Ed. 149 (1956).

*Hudson,* —— U.S.at ——, 118 S.Ct. at 493. The Court held that in making the later determination, the factors listed in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–169, 83 S.Ct. 554, 567–568, 9 L.Ed.2d 644 (1963) provided useful guideposts. The Court emphasized, however, the factors "must be considered in relation to the statute on its face ... and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson,* —— U.S. at ——, 118 S.Ct. at 493. (internal quotation marks omitted).

Next, the Court examined its holding in *Halper* and concluded its analysis deviated from the "traditional double jeopardy doctrine" discussed above in two key respects:

> First, the *Halper* Court bypassed the threshold question: whether the successive punishment at issue is a "criminal punish-

ment." Instead, it focused on whether the sanction, regardless of whether it was civil or criminal, was so grossly disproportionate to the harm caused as to constitute "punishment." In so doing, the Court elevated a single Kennedy factor—whether the sanction appeared excessive in relation to its nonpunitive purposes—to dispositive status.... The second significant departure in *Halper* was the Court's decision to "assess the character of the actual sanction imposed," 490 U.S. at 447, [109 S.Ct at 1901] rather than, as *Kennedy* demanded, evaluating the "statute on its face" to determine whether it provided for what amounted to a criminal sanction, 372 U.S. at 169[, 83 S.Ct. at 568].

*Hudson,* —— U.S. at ——, 118 S.Ct. at 494. The Supreme Court concluded *Halper*'s deviation from longstanding double jeopardy principles was "ill considered" and "has since proven unworkable." Citing *Kurth Ranch* and *U.S. v. Ursery,* 59 F.3d 568 (6th Cir. 1995) the Court explained that since the *Halper* decision it had realized that all civil penalties have some deterrent effect. *Id.* Consequently, if a sanction has to be " 'solely' remedial (i.e., entirely nondeterrent) to avoid implicating the Double Jeopardy Clause as suggested in *Halper,* then no civil penalties would be beyond the scope of the Clause." *Hudson,* —— U.S. at ——, 118 S.Ct. at 495.

After disavowing the analysis applied in *Halper,* the Court examined the civil sanctions imposed on the defendants according to the two stages of the *United States v. Ward* test. The Court concluded that the statutory language reflected Congress' intent that the monetary penalties and debarment sanctions imposed against the defendants for the banking violations were "civil in nature." The Court also concluded the second stage of the *United States v. Ward* test, as taken from *Kennedy v. Mendoza–Martinez,* was not satisfied because there was little evidence, much less the "clearest proof," that either the OCC monetary penalties or debarment sanctions are so punitive in form and effect as to

render them "criminal" despite Congress' intent to the contrary. Thus, the Court held criminal prosecution of the defendants would not violate the Double Jeopardy Clause. *Hudson,* —— U.S. at ——, 118 S.Ct. at 495.

### E. *Stennett v. State*

This Court recently addressed the question of whether our state tax on controlled substances constitutes "punishment" for purposes of double jeopardy. *Stennett v. State,* 941 S.W.2d 914 (Tex.Crim.App.1996). In *Stennett,* though we did not have the benefit of the Supreme Court's decision in *Hudson,* we did not conduct a *Halper* analysis. Rather than recognize the presence of a deterrent purpose or effect as dispositive of the double jeopardy question, we applied a traditional double jeopardy principle analysis similar to that of the Supreme Court in *Kurth Ranch.*[3]

We began *Stennett* by examining the statutory provisions of the tax on controlled substances and comparing them to those of Montana's tax on dangerous drugs. We noted that many of the same considerations emphasized by the Supreme Court also applied to our state drug tax and militated in favor of a conclusion that the Texas tax, like the Montana tax, constituted a penalty for criminal conduct. We observed that, as in Montana, the controlled substances tax in Texas is high and is imposed only against those person who possess or deal in marihuana or other controlled substances. We also recognized, however, that the Texas tax possess certain features the Montana tax does not:

> Unlike Montana, Texas does not impose its tax only on those who have been arrested and charged with a criminal offense. Instead, the obligation to pay the tax arises when the taxable event occurs, whether or not that event has yet come to the attention of law enforcement agencies, let alone become the subject of a criminal prosecution. Tex. Tax Code § 159.101(c). Moreover, the Texas legislature has provided a means for those who owe taxes on con-

---

3. The analysis applied in *Kurth Ranch* was noted approvingly in *Hudson.* In a footnote, the Supreme Court recognized its double jeopardy analysis in *Kurth Ranch* was proper because it applied a *"Kennedy*-like test before concluding Montana's dangerous drug tax was 'the functional equivalent of a successive criminal prosecution.' " *Hudson,* —— U.S. at ——, 118 S.Ct. at 501.

trolled substances to pay their bills in confidence and thus satisfy their tax obligation without subjecting themselves to arrest or otherwise bringing upon themselves a criminal prosecution. Tex. Tax Code § 159.005.

*Stennett*, 941 S.W.2d at 914. Consequently, we noted that for these reasons "we might be inclined to find that the Texas system of controlled substances taxation, unlike the Montana scheme, is not a punishment." *Id.* We concluded, however, in light of the statute's legislative history indicating the tax was plainly and undoubtedly intended to be a punishment by the legislature that enacted it, the tax was a "punishment subject to the prohibition of the United States Constitution against imposing it in a separate proceeding from that in which other criminal punishments for the same offense are imposed." *Stennett*, 941 S.W.2d at 916. Because of the legislative history clearly indicating the Legislature's intent that the tax serve as a criminal punishment, there was no need to turn to the second stage of the *United States v. Ward* test.

The issue, however, not addressed in *Stennett* is when is a person "punished" by the tax so as to forbid the state from even "attempting a second time to punish criminal-

ly." *Hudson*, —— U.S. at ——, 118 S.Ct. at 495 (citing *Helvering*, 303 U.S. at 399, 58 S.Ct. at 633).[4] When does "criminal punishment" occur in the context of a *prior civil sanction* was also not addressed in *Halper* or *Kurth Ranch* because those cases involved criminal trials where there was no question the defendants were punished. Criminal punishment was not questionable because, unlike the present case, the defendants in *Halper* and *Kurth Ranch* were criminally prosecuted and convicted of the drug offenses prior to the state taking action to enforce the tax assessment.[5] The current case presents the reverse situation because rather than raising a *prior criminal punishment* as a jeopardy bar to a *subsequent attempt to impose a civil punishment*, appellant is arguing a *prior civil proceeding* bars a *subsequent attempt to criminally prosecute* him. Without addressing whether appellant was actually "punished" or the doctrine of jeopardy attachment, the *Ward II* court agreed with appellant and held the tax assessment precluded appellant's criminal prosecution. However, we hold that before there can be a determination of whether appellant's criminal prosecution for possession of marihuana is barred by double jeopardy, we must first determine at what point is a person "punished" by the tax so as to

---

**4.** The attachment issue was not addressed due to the limited nature of our review in *Stennett*. This Court in *Stennett* granted the State's petition for discretionary review on the following ground:

> Whether the Court of Appeals erred in determining the Texas Controlled Substances Act constitutes punishment for double jeopardy purposes in light of *Department of Revenue of Montana v. Kurth Ranch* because the Texas tax does not contain the two "unusual features" that were found controlling in *Kurth Ranch*.

**5.** In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the defendant was criminally prosecuted under the federal criminal false-claim statute for filing false claims seeking federal reimbursement. Thereafter, the government filed a civil suit against the defendant under the Civil False Claims Act. *Id.* at 438, 109 S.Ct. at 1896 (citing 31 U.S.C. §§ 3729–3731 (1994)). The defendant ·claimed the civil suit was a second punishment, thereby violating the Double Jeopardy Clause. The *Halper* Court held "a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized

as remedial, but only as a deterrent or retribution." *Id.* at 448–49, 109 S.Ct. at 1901–02.

In *Kurth Ranch*, the defendants were arrested for possession of marihuana. The defendants' subsequently received a tax assessment for their possession of the taxable substance. *Kurth Ranch*, 511 U.S. at 773, 114 S.Ct. at 1942–43, 128 L.Ed.2d at 774–75. Six months later, the Kurths pled guilty to the drug charges and were assessed criminal penalties. After the conviction, the State sought to collect the tax on the marihuana. The Kurths claimed that the tax was a second punishment that violated the Double Jeopardy Clause. The Supreme Court determined that because the defendants had been convicted and punished for their criminal offenses they could not have a nonremedial tax imposed against them for the same offense in a separate proceeding. However, as noted by the majority in Kurth Ranch, because jeopardy had already attached in the criminal proceeding, the Supreme Court was not faced with "the question whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character." *Id.* at 781 n. 21, 114 S.Ct. at 1942 n. 21, 128 L.Ed.2d at 780 n. 21.

prevent the State from "attempting a second time to punish criminally" in contravention of the Double Jeopardy Clause's prohibition against multiple criminal punishments.

## II. TEXAS CONTROLLED SUBSTANCE TAX

### A. General Provisions

The State of Texas labels controlled substances, counterfeit substances, marihuana, and simulated controlled substances, as taxable substances. § 159.001(7). Tax is due immediately upon a dealer's [6] "purchase, acquisition, importation, manufacture, or production" of a statutorily specified amount of taxable substance. § 159.101(c). For "a taxable substance consisting of or containing marihuana," that amount is "more than four ounces." § 159.001(3)(B). For other taxable substances, including "a controlled substance, counterfeit substance or simulated controlled substance," the amount is "seven grams or more." § 159.001(3)(A). Although the tax on controlled substances taxes all substances either by weight or dosage unit, not all taxable substances are identically taxed. § 159.101(b)(1)-(3). For a "taxable substance consisting of or containing marihuana" the rate is $3.50 per gram. § 159.101(b)(2).

### B. Tax Determination

Once the tax is assessed by the comptroller a determination notice is issued informing the taxpayer of the amount due. § 159.101; § 111.001. The "dealer" may contest the tax assessment by petitioning the comptroller for a redetermination hearing or by filing a legal action. § 111.009(a); § 112.052. In either a redetermination hearing or a legal action, the comptroller provides a certificate reflecting the determination issued to the dealer. § 159.101(g). The certificate is *prima facie* evidence of three items: "(1) the determination of the stated tax or amount of the tax; (2) the stated amount of the penalties and interest; and (3) the compliance of the comptroller with [the Controlled Substances Tax] in computing and determining the amount due." § 159.101(g)(1)-(3).

### C. Collection of Tax

The tax on controlled substances may be collected by several means. § 111.015. The comptroller may seize and sell at public auction real and personal property of the dealer not exempt from execution within three years after a person becomes delinquent. § 111.017. Additionally, because all state taxes are secured by a lien on property subject to execution, the comptroller may file a tax lien against a dealer's property. § 113.001(a). The lien attaches to all of the property belonging to the dealer and continues until the taxes secured by the lien are paid. §§ 113.101(b); § 113.105(a). The comptroller may also notify any person of the tax determination who "possesses or controls a credit, bank or savings account, deposit, or other intangible or personal property" of, or who is "indebted" to, the dealer. § 111.021(a). The notice recipient may not transfer or dispose of this property for a period of 60 days after receipt of the notice, unless the comptroller consents to an earlier disposal. § 111.021(d)(2). The comptroller may levy upon the asset or debt at any time during the 60–day period. § 111.021(g). Upon receipt of the notice of levy, the person possessing the asset or debt is required to transfer the asset to the comptroller, or pay either the comptroller or dealer the amount owed. § 111.021(g).

### D. When does "Punishment" occur under the Statutory Structure of the Tax

It is clear that due to the statute's structure there are multiple points at which a person may be considered "punished": (1) automatic statutory imposition of the tax under § 159.101(c); (2) receipt of a tax determination notice after the comptroller has assessed the tax under § 159.101; *see also* § 111.001; (3) when a tax lien is imposed under § 113.001 or when State action is taken to enforce the lien; (4) when third parties are notified of a tax determination under

---

6. A "dealer" is a person who, in violation of Texas law, "imports into [Texas] or manufactures, produces, acquires or possesses in [Texas]" a certain amount of a taxable substance without immediately paying the appropriate tax. §§ 159.001(3), 159.101(c).

§ 111.021(a) or when State action is taken to levy against frozen assets or debt held by third parties under § 111.021(g); (5) forfeiture of assets under § 111.019; (6) the State obtaining a final judgment of tax liability under § 111.202; or (7) payment of the tax.

### 1. Importance of Distinguishing Between Statutory Structure

To determine whether appellant was criminally punished, we must examine the structure of the tax statute in relation to the facts before us. In this case, the records shows: (1) appellant received a notice from the comptroller informing him of a tax assessment of $109,546.50, together with a $10,954.65 penalty for his failure to pay the tax; (2) the comptroller issued a state tax lien against appellant's assets, and; (3) appellant made a $250 payment on the tax due.[7] Under these facts, appellant's criminal prosecution for possession *is barred* if we determine any one of the following statutory points constitute "punishment": (1) the automatic statutory imposition of the tax (because appellant possessed a taxable substance); (2) assessment of the tax as evidenced by comptroller's tax determination notice (because appellant received a determination notice); (3) the comptroller's imposition of a tax lien (because the record reflects the comptroller's issuance of a state tax lien on appellant's property); or, (4) a payment on the tax due (because the record indicates appellant made a $250 payment).

Appellant's criminal prosecution in this case, however, *is not barred* if we determine

7. We need not address whether the forfeiture of the $2,165.00 in cash and radar detector caused jeopardy to attach because this Court has previously recognized forfeiture of property under Chapter 59 of the Texas Code of Criminal Procedure is a civil in rem proceeding that is neither punitive nor criminal in nature for purposes of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *Fant v. State*, 931 S.W.2d 299 (Tex.Crim.App.1996); *see also United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

8. As this Court noted in *Stennett*, this type of case involves the third abuse, multiple punishments, because the tax on controlled substances serves as further "punishment" for criminal conduct already punishable by fines and incarceration under the Texas Penal Code. *Stennett*, 941

"punishment" does not occur under the tax until: (1) there is a permanent deprivation of ownership (because the record reflects only a restriction of appellant's ownership rights); (2) there is a full or substantial payment on the tax due (because appellant's payment constituted only 1/480th of the tax assessed): (3) the government obtains a final judgment of tax liability (because the record does not contain a final judgment of appellant's liability on the tax).

## III. ATTACHMENT OF JEOPARDY

The Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States reads: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Fifth Amendment prohibition against double jeopardy provides three distinct constitutional protections. First, it protects against a second prosecution for the same offense after acquittal. Second, it protects against a second prosecution for the same offense after a conviction. Third, it protects against multiple punishments for the same offense.[8] *See e.g., United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). The United States Supreme Court explained the principle against multiple punishments in *Ex parte Lange:*

> If there is anything settled in the jurisprudence of England and America, it is that no man can be *twice lawfully punished for the same offence* ... [and] there has never been any doubt of its entire and complete

S.W.2d at 917. In a multiple punishment case involving a civil proceeding, this Court recognizes that the law is presently unsettled as to whether jeopardy attaches when the defendant is placed "at risk" of punishment, that is, when the trial or adjudication begins (successive prosecutions approach), or whether jeopardy attaches when punishment is complete, that is, when the punishment is actually imposed (successive punishments approach). *See United States v. Idowu*, 74 F.3d 387, 396 (2nd Cir.1996) (and cases cited therein). For reasons expressed below, our examination of the facts and holding of *Kurth Ranch*, leads us to conclude that in determining whether a *criminal prosecution* is barred due to the prohibition against multiple punishments, attachment of jeopardy occurs in a *civil proceeding* when punishment is actually imposed.

protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense.

85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872 (1873) [emphasis added].[9]

■ In implementing this protection, the Supreme Court has "define[d] a point ... at which the constitutional purposes and policies are implicated by resort to the concept of 'attachment of jeopardy.'" *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265, 274 (1975). "Attachment of jeopardy" is necessary because in order for the principles of double jeopardy to be invoked, there must be a former jeopardy. *United States v. Torres,* 28 F.3d 1463, 1465 (7th Cir.1994). This Court recently addressed the doctrine of attachment of jeopardy in *Ex parte George:*

> [T]he modern development of constitutional jurisprudence makes the resolution of jeopardy questions depend, in most contexts, upon a doctrine known as the attachment of jeopardy. Thus, before it can be said that an accused *has been put in jeopardy a second time,* in violation of the Texas or United States Constitution, it must appear that he was actually *put in jeopardy before.*

*Ex parte George,* 913 S.W.2d 523, 525 (Tex. Crim.App.1995) [emphasis added]. Thus, determining when jeopardy *attaches* is the initial source for examining whether a proceeding is barred as a second jeopardy. *Crist v.* *Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24, 33 (1978).

## A. Attachment of Jeopardy in Proceedings that Impose Financial Sanctions

The United States Supreme Court has only recently held that civil fines, forfeitures, and now a tax, can constitute "punishment" that invokes the Double Jeopardy Clause.[10] In *Kurth Ranch,* the Supreme Court noted that "criminal fines, civil penalties, civil forfeitures, and taxes all share certain features" in that they "generate government revenues, impose fiscal burdens on individuals, and deter certain behavior." *Kurth Ranch,* 511 U.S. at 778, 114 S.Ct. at 1945, 128 L.Ed.2d at 778. In the context of civil forfeitures and civil penalties, a few courts in other jurisdictions have addressed at what point these sanctions constitute "punishment" causing jeopardy to attach. Conceding that these decisions are advisory, and not controlling, this Court observes that those decisions give guidance in determining when jeopardy attaches in the imposition of this state's tax on controlled substances.

### 1. Civil Forfeitures

Until recently, the federal courts were at odds as to whether federal forfeiture under the civil statutes constituted "punishment" to which the Double Jeopardy Clause of the Fifth Amendment applied.[11] However, the United States Supreme Court recently resolved this confusion by concluding federal civil forfeitures do not constitute "punish-

---

**9.** The Supreme Court has recognized that the Double Jeopardy Clause does not bar cumulative punishments imposed in a single proceeding. *See e.g., Ohio v. Johnson,* 467 U.S. 493, 500, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984). Thus, if the State were to seek both imprisonment and the tax in the same indictment, rather than commencing separate criminal and administrative actions, the existence of only one jeopardy would be ensured.

**10.** *See Montana Dept. of Revenue v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (determining defendant convicted and punished for criminal offense may not have nonremedial tax imposed against him for same offense in separate proceeding); *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (observing federal civil forfeiture stat-

ute did not serve solely remedial purpose and, as such, forfeiture under civil statute constituted "punishment"); *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (recognizing nonremedial civil fine, disproportionate to damage caused, constituted "punishment" for double jeopardy purposes).

**11.** *Compare United States v. Ursery,* 59 F.3d 568 (6th Cir.1995) (holding civil forfeiture was "punishment" for double jeopardy purposes) and *United States v. $405,089.23 in U.S. Currency,* 33 F.3d 1210 (9th Cir.1994) (determining civil forfeiture is "punishment" barred by double jeopardy following criminal conviction) *with United States v. Tilley,* 18 F.3d 295 (5th Cir.1994) (holding forfeiture of drug proceeds is remedial and does not bar subsequent prosecution for sale of drugs).

ment" for purposes of the Double Jeopardy Clause because they are civil *in rem* proceedings which are neither punitive nor criminal in nature. *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). In light of the Supreme Court's recent decision in *Ursery*, the decisions of the lower federal courts holding that the Double Jeopardy Clause applies to civil forfeitures, are incorrect. However, the analysis used by these courts appears helpful in determining if appellant was "punished" by the tax in the instant case causing jeopardy to attach.

Many of these civil forfeiture cases have held that jeopardy does not "attach" until the government obtains a final judgment against the defendant's property.[12] These federal courts unanimously hold that jeopardy does not attach in a civil forfeiture proceeding merely because the government has asserted a claim against the defendant or seized the defendant's property. Thus, these authorities refuse to recognize the fact that a person has suffered 'some harm' as dispositive of the jeopardy question.[13]

## 2. Civil Penalties

The rules regarding the attachment of jeopardy for civil penalties are similar to those for civil forfeitures and criminal prosecutions. The Fifth Circuit addressed the attachment of jeopardy in the context of civil penalties in *United States v. Sanchez–Escareno*, 950 F.2d 193 (5th Cir.1991), *cert. denied*, 506 U.S. 841, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992). *Sanchez–Escareno* involved three cases in which defendants were arrested separately by United States Customs officials for attempting to smuggle marijuana into the United States. Each defendant was assessed a large fine and each executed a number of

documents acknowledging the penalty, including a promissory note. The promissory notes stated that "this document in any subsequent legal proceeding shall be *prima facie* evidence of this unpaid personal penalty." *Sanchez–Escareno*, 950 F.2d at 196. Another document entitled "Notice of Penalty or Liquidated Damages Incurred and Demand for Payment Document," notified each defendant that a "personal penalty in the above-cited amount has been assessed against you," and explained that he had a right to object to the penalty. *Id.* The defendants never paid the penalty, and the government took no steps to collect on the promissory note. The defendants were subsequently indicted on different charges arising out of the same transaction. The district court concluded that the three defendants had been "punished" by the assessment of the civil penalties and the execution of the promissory notes, and thus held that the criminal prosecutions were jeopardy barred.

The Fifth Circuit reversed, holding that the defendants had not yet been "punished" for purposes of the Double Jeopardy Clause. The court observed that the government had not yet attempted to take anything from the defendants and the defendants' property and liberty were "unmolested and free from the exercise of sovereign power." *Id.* at 202. The court stated that the defendants were simply presumed to be personally obligated to the government, the holder of the promissory notes, unless and until they interposed a defense sufficient to relieve them of their obligations. The government had the defendants execute the promissory notes to obtain evidence of their indebtedness. They did not constitute payment or satisfaction of the obligation. *Sanchez–Escareno*, 950 F.2d at 196. The Fifth Circuit concluded:

**12.** *United States v. McDermott*, 64 F.3d 1448, 1455 (10th Cir.1995) (jeopardy did not attach when property was seized or administrative claim filed); *United States v. Park*, 947 F.2d 130, 135 (5th Cir.1991) (jeopardy does not attach until there has been an adjudication or final administrative action); *Ragin v. United States*, 893 F.Supp. 570, 574 (W.D.N.C.1995) (jeopardy attaches in civil forfeiture proceeding when the final judgment of forfeiture is entered, not when claim is filed or property is seized); *United States v. Stanwood*, 872 F.Supp. 791, 798–800 (D.Or. 1994) (jeopardy attaches in civil forfeiture when

final judgment is entered, not when property is seized or when government enters into settlement discussions).

**13.** As we will discuss later, the refusal to recognize the assertion of a valid legal claim or the fact that the defendant has suffered 'some harm' as dispositive, is consistent with criminal proceedings. In criminal prosecutions, jeopardy does not attach merely because an indictment has been returned or the defendant has been subjected to pretrial detention.

Here, the government has yet to subject the defendants to trial at all or to exact any form of punishment whatsoever. Defendants are presently in the same position as someone who has been charged in two criminal proceedings, but has not yet been tried or punished in either. If the defendants actually pay the civil fines, then any subsequent criminal prosecution would be double jeopardy. *See Ex parte Lange,* 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1873)(when defendant "fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone"). Likewise, if the government chooses to go forward with its prosecution of the defendants, jeopardy would attach when the jury is empaneled and sworn, as it would in any criminal case.... Finally, if the government attempts to collect on the notes, jeopardy would attach when the court begins to hear evidence in that actions.

*Sanchez–Escareno,* 950 F.2d at 202–03.

In determining the assessment of the civil penalty did not cause jeopardy to attach, the Fifth Circuit found three factors particularly significant: (1) the promissory notes were simply *"prima facie* evidence" of the defendants' indebtedness; (2) the government had informed the defendants "of a possible procedure for side-stepping the payments of these assessments," and; (3) the promissory notes "anticipate[d] the need for future legal action to enforce their terms." *Sanchez–Escareno,* 950 F.2d at 202. For the reasons expressed below, this Court finds all three factors are present with respect to the comptroller's notice of tax assessment in the present case: (1) § 159.101(g) of the Tax Code provides that, just like the promissory note in *Sanchez–Escareno,* the comptroller's tax determination is only *"prima facie* evidence" of the appellant's indebtedness; (2) the comptroller informed appellant "of a possible procedure for side-stepping the payments of these assessments," just as in *Sanchez–Escareno,* and; (3) the comptroller's notice of tax assessment, just like the promissory note in *Sanchez–Escareno,* "anticipate[d] the need for future legal action to enforce the terms."

### 3. Tax Liability

#### a. Tax Statutes in Other Jurisdictions

The majority of cases addressing the attachment of jeopardy in the context of civil "punishment" deal with civil forfeitures or penalties. Only a few cases address the attachment of jeopardy specifically in the context of tax liability. In *People v. Litchfield,* 902 P.2d 921 (Colo.Ct.App.1995), *aff'd on other grounds,* 918 P.2d 1099 (Colo.1996), the Colorado revenue department assessed the controlled substances taxes and penalties against the defendants subsequent to the defendants' arrest but prior to their criminal trial,. *Id.* at 923. The defendants objected to the assessment and requested an administrative hearing. At the time of trial, however, the department had taken no action on the defendants' objection. The defendants thereafter asserted their criminal trial was barred by jeopardy because they had been "punished" by the tax assessment. Relying upon the Fifth Circuit's opinion in *Sanchez–Escareno,* the Colorado court rejected that contention, holding the assessment of taxes against the defendants did not place them in jeopardy as there had been no hearing and "no final determination of defendants' liability for the assessed tax." *Litchfield,* 902 P.2d at 925.

On the other hand, in *Bryant v. State,* 660 N.E.2d 290 (Ind.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996), the Indiana Supreme Court held the mere assessment of the state's controlled substance tax is sufficient to place the defendant in jeopardy. Following the defendant's arrest for drug offenses, the Indiana Department of Revenue dispatched a special agent to the jail to determine the amount of Controlled Substance Exercise Tax owed. *Bryant,* 660 N.E.2d at 294. The agent then met with the defendant and demanded immediate payment of $83,680. Because the defendant did not immediately pay, the agent served him with a "Record of Jeopardy Findings and Jeopardy Assessment Notice and Demand" which required payment of the tax plus a 100 percent penalty for nonpayment of the tax. The department then levied on defendant's bank accounts and seized his

home. Following his criminal conviction the defendant appealed the double jeopardy issue.

After concluding the tax was "punitive," the majority next addressed which jeopardy attached first: the criminal sanction or the civil sanction. After examining the Double Jeopardy Clause and the "factors and policies underlying attachment" of jeopardy, the *Bryant* court observed that the clause referred to the *risk* that a person will, for a second time, be convicted of the same offense. *Id.* at 299. The *Bryant* court concluded that jeopardy attached when Bryant was served with the "Record of Jeopardy Findings and Jeopardy Assessment Notice" because he had faced *more than the risk* of guilt because the department of revenue had effectively determined his guilt by assessing *the 100 percent penalty* for nonpayment.

In *Fassinger v. State,* 666 N.E.2d 58 (Ind. 1996), the Indiana Supreme Court was asked to addressed whether a tax assessment, which contained no penalty, was a jeopardy in and of itself. The defendant was charged with felony delivery of marihuana. *Fassinger,* 666 N.E.2d at 58. The Indiana Department of Revenue subsequently assessed the defendant with $17,000 in tax, penalty, and interest. After paying approximately $450 on the tax, defendant moved to have his pending criminal charges dropped on double jeopardy grounds. Both the trial and appellate courts denied his motion. The Supreme Court of Indiana disagreed with the lower courts. Relying on *Bryant,* the Indiana court held that federal double jeopardy "attaches in Indiana's Controlled Substance Excise Tax when the [Indiana Department of Revenue] issues its jeopardy assessment." *Id.* We find the *Fassinger* court's characterization of the *Bryant* holding is misplaced. The *Bryant* court stated in a footnote that it was not addressing "whether the assessment of the tax itself was jeopardy independent of the 100 percent penalty and criminal charge." *Bryant,* 660 N.E.2d at 296 n. 13. Thus, contrary to the *Fassinger* court's reading of the case, the *Bryant* court refused to conclude the "assessment" of the tax absent more was the functional equivalent of being adjudicated

guilty by the state of possessing a controlled substance.

## IV. Attachment of Jeopardy under the Texas Controlled Substances Tax Act

Now that this Court has surveyed the approaches used by various courts in determining when a person is "punished" in the context of punitive civil sanctions, we examine our state tax on controlled substances.

### a. Automatic Statutory Imposition of the Tax

■ The Texas Controlled Substances Tax becomes due immediately upon a person's "possession" of a taxable substance. § 159.101(a). Therefore, liability on the tax is not dependant on a person's receipt of a tax determination notice from the comptroller's office. Rather, once a person is found in possession of a taxable substance containing no payment certificates the comptroller is responsible for collecting any unpaid taxes. § 111.001.

Under the Supreme Court's holding in *Kurth Ranch,* this Court finds that the automatic statutory imposition of the tax cannot constitute "punishment." In *Kurth Ranch* the Supreme Court reasoned that the Double Jeopardy Clause prohibits multiple "punishments" for the same conduct. *See Kurth Ranch,* 511 U.S. at 784, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. Because the defendants in *Kurth Ranch* were criminally "punished" in a prior proceeding, the State was jeopardy-barred from attempting to impose a second punishment (i.e., attempting to collect the tax). *Id.* We recognize that holding the statutory imposition of the tax is "punishment" causing jeopardy to attach is inconsistent with the Supreme Court's holding in *Kurth Ranch* because all criminal prosecutions for drug offenses would be jeopardy-barred *regardless* of whether the accused is actually "punished." This is because jeopardy would attach the moment a person comes into possession of the taxable substance irrespective of whether the State attempts to collect the tax. Thus, we find that because appellant suffers no "punishment" by the statutory imposition of the tax as required by *Kurth*

*Ranch,* the imposition of the tax does not jeopardy-bar appellant's criminal prosecution for possession.

### b. Comptroller's Tax Determination Notice

■ According to the statute, when the tax is "assessed" the comptroller issues a determination informing the person of the amount of tax that is due. § 159.101. The State alleges that the determination issued by the comptroller is not a final judgment which causes jeopardy to attach absent judicial enforcement. Appellant, relying on the Supreme Court's holding in *Kurth Ranch* that the tax was barred despite the absence of a civil proceeding reducing the tax assessment to a final judgment, complains that a tax determination is "equivalent" to a final judgment. Appellant also points out that administrative proceedings necessary to make the tax assessment final were stayed by the comptroller, and the courts in *Kurth Ranch* still determined the initiation of the tax assessment proceedings were jeopardy barred.

Appellant fails to recognize the factual differences between the present case and *Kurth Ranch.* In *Kurth Ranch,* the defendants pled guilty to the drug charges and were assessed criminal penalties. Thus, there was no question the defendants had been "punished" prior to the State of Montana taking action to collect on the tax. Because the Double Jeopardy Clause bars "successive punishments" for the same conduct, the Supreme Court held the State of Montana's subsequent attempt to "punish" the defendants for the same conduct was a jeopardy violation. Consequently, because the Double

Jeopardy Clause afforded the defendants immediate jeopardy protection against the risk of a *second punishment* for the same conduct, the Supreme Court was not called upon to decide whether the defendants had been actually "punished" by the tax.

Because jeopardy had undeniably attached in the defendants' prior criminal trial and the question of whether the defendants were "punished" by the tax was not before the Supreme Court, this Court rejects the conclusion, by the court of appeals in *Ward II* and appellant, that the Supreme Court held it was the "assessment" of the tax that triggered jeopardy. Instead, this Court finds that it was the State of Montana's attempt to actually impose or collect the tax after the defendants had pleaded guilty and were "punished" which placed the defendants at *risk* of a *second punishment* causing jeopardy to bar the state's attempt to collect the tax.[14]

Despite the factual differences between this case and *Kurth Ranch,* this Court finds the Supreme Court's reasoning in *Kurth Ranch* can be applied in a factually 'reversed' case. For example, assume a defendant is indicted for possession of a controlled substance and later receives a tax determination from the comptroller based on the same possession. Before the defendant is tried on the criminal allegations, he chooses to invoke his right to a hearing on the civil tax assessment and a final judgment of liability is rendered. Under this scenario, because jeopardy has undeniably attached in the civil tax proceeding, the Double Jeopardy Clause prohibits the defendant from being punished again for the same criminal conduct. Thus, the defen-

14. The facts and holding of *Kurth Ranch* inescapably lead us to the conclusion that the Supreme Court did not hold the initial assessment of the taxes constituted the impermissible jeopardy since the tax assessments were issued prior to the criminal proceeding. An examination of the precise facts of *Kurth Ranch* show that: (1) the drug products were seized on October 19, 1987; (2) the initial "Jeopardy Assessment Tax" on the drugs was issued on December 7, 1987, and notice was sent to each defendanttaxpayer; the assessment was subsequently revised on May 7, 1988 from $491,776.20 to $750,096.68 (3) the sum of $30,680.01 was then subsequently levied upon and seized pursuant to other state court proceedings; (4) the Kurths filed a timely administrative protest of the tax proceeding which was suspended pending the criminal action; (5) the Kurths pled guilty and were sentenced on July 18, 1988; (6) on September 9, 1988, the Kurths filed a bankruptcy petition, challenging the tax; this action also stayed the administrative proceeding; and (7) on May 8, 1990, the bankruptcy court held the tax assessment violated the proscription against double jeopardy; and ordered the sums collected returned to the defendants. *In re Kurth Ranch,* No. CV–90–084–GF, 1991 WL 365065 (D. Ct. Mont. April 23, 1991) (affirming bankruptcy court judgment).

dant does not have to wait until he is to be "punished" in the criminal prosecution before asserting double jeopardy; rather the defendant is entitled to assert double jeopardy when the state attempts to proceed with his criminal prosecution. This is because a criminal proceeding would place the defendant at *risk* of a constitutionally prohibited second punishment for the same conduct. As the *Kurth Ranch* majority explains, it is the *risk* of subjecting an accused to a *second* impermissible punishment that invokes the Double Jeopardy Clause's protection against multiple punishments for the same conduct.

> [I]t is a second punishment within the contemplation of a constitutional protection that has deep roots in our history and jurisprudence, ... and therefore must be imposed during the first prosecution or not at all. The proceeding Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time for the same offense.

*Kurth Ranch,* 511 U.S. at 784, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. Therefore, had jeopardy attached in the civil tax proceeding rather than the criminal proceeding any proceeding initiated by the State to prosecute the *Kurth Ranch* defendants on the possession of drugs would have been considered the functional equivalent of a successive prosecution placing them at *risk* of a second punishment for the same conduct.

Appellant contends the tax assessment is equivalent to a final judgment because it is used by the comptroller to initiate proceedings to collect the unpaid taxes. Appellant claims support for this contention in the fact that a civil action before a judge or a final judgment is not a necessary predicate to the comptroller's ability to collect the tax under the statute. Contrary to appellant's argument, this Court holds the comptroller's issuance of a tax determination has the same effect for jeopardy purposes as the government's filing of a claim in a civil forfeiture or the return of an indictment in a criminal prosecution. It is not the functional equivalent of a final adjudication of guilty, but a formal pleading or determination of civil liability.[15] Because the State has taken no judicial action to enforce the tax assessment, appellant had nothing taken from him and his property and liberty remain "unmolested and free from the exercise of sovereign power." *Sanchez–Escareno,* 950 F.2d at 202.

Under section 159.101 the tax determination serves only as *"prima facie* evidence" of a person's indebtness, unless and until he imposes a defense sufficient to relieve him of his obligations. The defenses available to appellant were explained in the tax determination's "Taxpayer Rights Summary." The Summary explained that appellant had a right to request a hearing on the tax assessment, as well as to claim a tax refund after a jeopardy or deficiency determination, if any, was made.[16] The Summary further contemplated that in the event that the defendant did not request a hearing or pay the tax, the State would be required to initiate additional future legal action in order to collect. These facts demonstrate that the tax assessment

---

**15.** This Court cannot agree with appellant's argument that because a person may forgo his statutory right to have his liability on the tax adjudicated and chooses to make a payment on the tax, the determination is essentially transformed into a final judgment. This does not mean, however, that should an accused choose to forgo this statutory right to a final judgment, he can never suffer "punishment" for purposes of the Fifth Amendment's prohibition against multiple punishments. As we will explain below, this Court concludes a person is entitled to this double jeopardy protection when permanently divested of her property.

**16.** The "Taxpayer Rights Summary" in the comptroller's tax determination reads:

> If you do not agree with the tax on this billing, you may file a request on or before *04/06/92* for a hearing. Your request must be filed with this office and include a statement which lists the specific reasons why you disagree.
> *See the back of this notice for an explanation. If you do not request a hearing and you fail to pay the amount due, several actions may be initiated to protect the interest of the State. These include but are not limited to: filing of tax liens; suit for injunction and/or judgment, revocation or suspension of any permit, license or certificate issued by the comptroller, withholding of state issued warrants, forfeiting of bond or security posed, requiring new or additional bond or security, freezing of assets, seizure and sale of properties. (TEX. TAX CODE ANN. SECS 111.021 AND 111.022.)

was not a final determination of appellant's tax liability, nor a final judgment.

### c. Imposition of a Tax Lien

 According to article 113.001(a), all taxes due the State are secured by a lien. The lien attaches to all of the property belonging to the person liable on the tax and continues until the taxes secured by the lien are paid. § 113.101(b); § 113.105(a). In his writ of habeas corpus, appellant argues that the tax lien issued by the comptroller is "punishment" causing jeopardy to bar his criminal prosecution for possession of marihuana. Appellant suggests that the tax lien is "punishment" because it infringes on his property rights.[17] We disagree. Like a tax determination issued by the comptroller, the filing of a tax lien on a person's assets is comparable to the government's seizure of the defendant's property in a forfeiture case or the pretrial detention of a defendant in a criminal case. All three restrictions infringe upon a defendant's liberty or use of property but do not constitute a permanent divestment of these rights. A tax lien neither extinguishes a defendant's ownership rights, nor does it vests title in the State. Though appellant contends that these infringements or restrictions constitute "punishment," for purposes of the Double Jeopardy's prohibition against "successive *punishments,*" we refuse to recognize such infringements or restrictions as dispositive of the issue presently before us. Nor do we find the fact that appellant may have suffered some legal or social detriment dispositive. In a criminal setting jeopardy does not attach when a person has been *arrested* and *incarcerated* awaiting trial. This is true even though the person is deprived of her liberty, suffers a tarnished reputation, and may lose her job. According to both state and federal law a defendant is not placed in jeopardy until a proceeding begins before a trier of fact having jurisdiction to try the guilt or innocence of the accused.[18]

A tax lien infringes or restricts a person's property rights but does not extinguish ownership because, like appellant, a person may retain ownership in the property by paying the tax due. § 113.008. Appellant also has a chance of having the lien lifted by requesting a redetermination hearing under § 111.009(a), by bringing suit after making a protest payment under § 112.052, or by suing to determine the validity of the tax lien under § 113.106.

Furthermore, a tax lien does not permanently divest a person of ownership in his property because such a lien under these circumstances is only conditional in nature. According to § 159.205(b) any tax lien imposed by the comptroller is "subordinate to the right of a federal, state or local law enforcement authority to seize, forfeit, or retain property under Chapter 481, Health and Safety Code; Chapter 59, Code of Criminal Procedure; or any other criminal forfeiture law of this State or of the United States." Thus, the comptroller may be required to defer to other claimants.

Finally, we find that a tax lien cannot constitute "punishment" because it can simply be withdrawn by the State or comptroller. On August 27, 1997 this Court allowed the State to supplement the record in this case. According to this record, the comptroller requested that the State tax lien be withdrawn. Consequently, if jeopardy was found to "attach" at this point, appellant's criminal conviction would be jeopardy-barred despite the fact that the lien was withdrawn and there was no risk of *Kurth Ranch's* prohibition against "successive punishments." For these reasons, we cannot say that absent an attempt by the State to enforce the tax lien Appellant was "punished" so as to bar the

---

**17.** The Supreme Court has recognized that whether a sanction constitutes punishment for jeopardy purposes is not determined from the perspective of the defendant. *United States v. Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7, 104 L.Ed.2d at 501 n. 7.

**18.** Under both the State and Federal Constitutions, jeopardy attaches in a jury trial when the

jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Proctor v. State,* 841 S.W.2d 1 (Tex.Crim.App. 1992). In a bench trial, this Court recognizes that jeopardy attaches when both sides have announced ready and the defendant has pled to the charging instrument. *See e.g., State v. Torres,* 805 S.W.2d 418 (Tex.Crim.App.1991).

State's attempt to criminally prosecute him for possession of marihuana.

#### d. Payment on the Tax

■ According to the "Notice of Tax Due," appellant was assessed a tax of $109,546.50 and $10,954.50 penalty. Rather than challenge his liability on the tax and obtain a final judgment, appellant chose to voluntarily make a $250 payment on the amount due. After making this token payment, appellant immediately filed a pre-trial writ of habeas corpus arguing that his payment constituted "punishment" for double jeopardy purposes barring the State from criminally prosecuting him for possession of marihuana. Appellant contends that this Court in *Stennett* held that "partial payment" of the tax constitutes "punishment" for jeopardy purposes. We find such a characterization of this Court's holding in *Stennett* misplaced.

In *Stennett* this Court was asked to determine whether the tax on controlled substances was "punitive" for purposes of the Double Jeopardy Clause in light of *Kurth Ranch*. This Court held the tax was "punishment" and affirmed the court of appeals decision which also found the tax to be "punitive." However, in *Stennett* we did not address *when* the tax on controlled substances constitutes "punishment." Since our decision in *Stennett*, several courts of appeals have addressed this unresolved question. At least one court of appeals recognized that "the issue of when jeopardy attached, when the State assessed the tax, or when Stennett made a partial payment" was not addressed by this Court. *Broussard v. State*, 1997 WL 530749, —— S.W.2d —— (Tex.App.—Tyler 1997). Other courts have avoided the issue and summarily conclude that "assessment" or "partial payment" constitutes punishment triggering jeopardy. *See State v. Rocha*, 944 S.W.2d 701 (Tex.App.—Corpus Christi 1997) (recognizing defendant was "punished" for possession of marihuana and cocaine when he received notice of tax assessment from comptroller); *DeLeon v. State*, 951 S.W.2d 283 (Tex.App.—Houston (14th Dist.) 1997) (concluding defendant's receipt of tax assessment notice from comptroller constituted "punishment" for possession of cocaine); *Ledford v.*

*State*, 1997 WL 109948 (Tex.App. Houston (14th Dist.) 1997) (holding that because assessment and partial payment occurred before defendant was prosecuted for possession jeopardy barred his criminal prosecution).

In reviewing these decisions, a majority of the lower courts have interpreted our decision to affirm the court of appeals holding in *Stennett*, rather than to reverse and remand, as implicitly holding that "assessment" and/or "partial payment" constitute punishment. In order that we might clarify any ambiguity created by affirming the court of appeals' decision in *Stennett*, we now overrule *Stennett* to the extent that it may be interpreted as holding the "assessment" of the tax on controlled substance and/or "partial payment" of the tax due constitute "punishment" for purposes of *Kurth Ranch's* prohibition against "successive punishments." Because we have already concluded that the comptroller's tax assessment and/or issuance of a tax determination notice does not constitute "punishment," we now address whether appellant's $250 payment on $109,546.50 in taxes, along with a $10,954.65 penalty constitutes "punishment" so as to bar the State from criminally prosecuting him for possession of marihuana.

In this case, appellant did not require the State to obtain a final judgment of his liability on the tax. Instead, he simply sent the comptroller a $250 check for the amount determined due. There is nothing in the record, however, to indicate that Appellant made arrangements with the comptroller to pay the remaining amount. Nor is there in anything in the record to indicate that appellant will *ever* pay the remaining tax due.

■ According to § 112.052, a person may bring suit to challenge the validity of the tax after making a payment, and if successful, recoup from the state any payments made. Thus, we hold absent full payment of the tax or a pay arrangement with the comptroller's office for the remaining amount due, there is no "punishment" for purposes of the Double Jeopardy Clause's prohibition against multiple punishments. This is because if a payment on the tax were to constitute "punishment," jeopardy would attach the moment a

payment is made and a subsequent attempt to punish the defendant would be barred as a second jeopardy attempt. *See Kurth Ranch,* 511 U.S. at 784, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. Due to a person's statutory right to challenge the tax even after making a protest payment, a defendant's criminal prosecution may be jeopardy-barred regardless of whether the defendant was actually punished.

This is best illustrated by an example. Assume the comptroller assesses the tax and issues a tax determination for $200,000. The defendant is also indicted by the grand jury for possession of the controlled substance. Before the defendant is tried on the criminal charges, a $100 payment is made on the tax in an attempt to jeopardy-bar the criminal prosecution. If the defendant subsequently protests the tax under § 112.052 and wins, because jeopardy attached at the time of his payment, the State would be barred from proceeding with the criminal prosecution. This would be true regardless of the fact that the defendant *suffered no punishment in the tax proceeding.* Thus, having actually suffered no civil or criminal "punishment", the defendant reaps a windfall. Unlike the defendants in *Kurth Ranch,* the defendant above does not run the risk of multiple punishments.

After examining the record in this case, we find appellant neither received a final judgment of tax liability nor was divested of ownership rights in his property. Therefore, this Court holds that appellant was not "punished" by the imposition of the tax on his alleged possession of marihuana. The trial court was correct in its holding that the State's attempt to criminally prosecute appellant did not subject him to multiple punishments in violation of the Double Jeopardy Clause. The trial court's denial of appellant's pre-trial writ of habeas corpus claiming his criminal prosecution for possession is violative of the Double Jeopardy Clause is affirmed. Having found no multiple punishments for double jeopardy purposes, this Court need not address the State's other arguments.[19]

The judgment of the Court of Appeals is REVERSED. The trial court's decision is AFFIRMED.

MEYERS, Judge, filed a dissenting opinion, in which BAIRD, and OVERSTREET, Judges, joined.

MEYERS, Judge, dissenting.

Appellant was indicted for possession of marihuana and possession of marihuana on which no tax had been paid. He thereafter received notice from the comptroller informing him that he owed $109,546.50 in taxes and $10,954.65 in penalties. The comptroller also issued and filed a tax lien in the amount of $120,501.15 against appellant's assets. The majority holds that the petitioner suffered no "punishment" for purposes of double jeopardy because he "neither received a final judgment of tax liability nor was permanently divested of his ownership rights in his property." *Ex parte Ward,* 964 S.W.2d 617, 633 (Tex.Crim.App.1998). But a tax assessment under our provisions has the effect of an appealable judgment. This constitutes punishment for purposes of double jeopardy. I dissent.

In *Stennett v. State,* 941 S.W.2d 914, 917 (Tex.Crim.App.1996), we held that the controlled substances tax is a punishment subject to the prohibition of the United States Constitution against imposing it in a separate proceeding from that in which other criminal punishments for the same offense are imposed. However, *Stennett* did not explain what aspect of the tax constitutes punishment for double jeopardy purposes: (1) the automatic statutory imposition of the tax under § 159.101(c) of the Tax Code; (2) the assessment of the tax by the Comptroller under § 159.101(f) of the Tax Code; or (3) the payment or partial payment of the tax by the taxpayer or, in lieu thereof, a judicial proceeding resulting in a judgment against the taxpayer. Put another way, the question presented here is *when* is a person punished by the controlled substances tax. A survey of the applicable statutes is necessary to this determination.

**19.** The State's second ground for discretionary review is dismissed without prejudice.

"A tax is imposed on the possession, purchase, acquisition, importation, manufacture, or production by a dealer of a taxable substance on which a tax has not previously been paid under [Chapter 159 of the Tax Code]." TEX. TAX CODE ANN. § 159.101(a). "A dealer shall obtain the necessary tax payment certificates before the tax becomes due as provided by Section 159.101 of this code." *Id.* at § 159.102(b). The certificate must be affixed to the controlled substance. *Id.* at § 159.102(a). "The tax becomes due immediately when a dealer possesses, purchases, acquires, manufactures, or produces in this state or imports into this state the taxable substance on which the tax has not previously been paid." *Id.* at § 159.101(c).

"The comptroller shall collect the taxes imposed by [Title 2 (State Taxation)] except as otherwise provided by this title." *Id.* at § 111.001.

> When the comptroller makes an assessment under this chapter, the comptroller shall issue a determination stating the amount and that the tax collection is in jeopardy. The amount determined is due and payable immediately. A determination made under this chapter becomes final on the expiration of 20 days after the day on which the notice of the determination was served by personal service or by mail unless a petition for a redetermination is filed before the determination becomes final.

*Id.* at § 159.101(f). "If a determination made under this chapter becomes final without payment of the amount of the determination being made, the comptroller shall add to the amount a penalty of 10 percent of the amount of the tax and interest." *Id.* at § 159.101(g). "A person having a direct interest in a determination may petition the comptroller for a redetermination." *Id.* at § 111.009(a). "In a redetermination proceeding held or a judicial proceeding brought under [Chapter 159], a certificate from the comptroller that shows the issued determination is prima facie evidence of: (1) the determination of the stated tax or amount of tax; (2) the stated amount of the penalties and interest; and (3) the compliance of the comptroller with this chapter in computing and determining the

amount due." *Id.* at § 159.101(h). "An order or decision of the comptroller on a petition for redetermination becomes final 20 days after service on the petitioner of the notice of the order or decision." *Id.* at § 111.009(d).

As for the collection of taxes, "[t]he rights, powers, remedies, liens, and penalties provided by this title are cumulative of other rights, powers, remedies, liens, and penalties for the collection of taxes provided by this title and by other law." *Id.* at § 111.015. There are several means by which tax may be collected.

> Before the expiration of three years after a person becomes delinquent in the payment of any amount under this title, the comptroller may seize and sell at public auction real and personal property of the person. A seizure made to collect the tax is limited only to property of the person that is not exempt from execution.

*Id.* at § 111.017. "All taxes, fines, interest and penalties due by a person to the state under this title are secured by a lien on all of the person's property that is subject to execution. The lien for taxes attaches to all of the property of a person liable for the taxes." *Id.* at § 113.001. "The state tax lien on personal property and real estate continues until the taxes secured by the lien are paid." *Id.* at § 113.105(a).

> If a person is delinquent in the payment of an amount required to be paid or has not paid an amount claimed in a determination made against the person, the comptroller may notify personally or by registered mail any other person who: possesses or controls a credit, bank or savings account, deposit, or other intangible or personal property belonging to the delinquent or the person against whom the unpaid determination is made, hereafter referred to as "assets"; or owes a debt to the delinquent person against whom the unpaid determination is made.

*Id.* at § 111.021(a). "[T]he person receiving the notice . . . may not transfer or dispose of the asset or debt possessed, controlled, or owed by the person . . . for a period of 60 days after receipt of the notice, unless the comptroller consents to an earlier disposal." *Id.* at § 111.021(d)(2).

At any time during the last 45 days of the 60–day period as stated in Subdivision (2) of Subsection (d) of this section, the comptroller may levy upon the asset or debt. The levy shall be accomplished by delivery of a notice of levy, upon receipt of which the person possessing the asset or debt shall transfer the asset to the comptroller or pay to the comptroller the amount owed to the delinquent or to the person against whom the unpaid determination is made. *Id.* at § 111.021(g). "[T]he comptroller may bring an action in the courts of this state, or any other state, or of the United States in the name of the people of the State of Texas to collect the amount delinquent together with penalties and interest." *Id.* at § 111.202. "The attorney general shall bring suit in the name of the state to recover delinquent state taxes, tax penalties, and interest owed to the state." *Id.* at § 111.010(a).

In addition to the administrative remedy of redetermination, a taxpayer may bring suit after making a protest payment. *Id.* at § 112.052. A taxpayer may sue to determine the validity of a lien. *Id.* at § 113.106. In a suit pertaining to the controlled substances tax, the comptroller's certificate showing delinquency is prima facie evidence of the amount of tax, the amount of penalties and interest, the delinquency, and the comptroller's compliance with the Tax Code in computing and determining the amount due. *Id.* at § 111.013.

In *Stennett*, we examined the Texas controlled substances tax and observed:

> Texas does not impose its tax only on those who have been arrested and charged with a criminal offense. Instead, the obligation to pay the tax arises when the taxable event occurs, whether or not that event has yet come to the attention of law enforcement agencies, let alone become the subject of a criminal prosecution.

*Stennett*, 941 S.W.2d at 916. However, that observation was made in the context of determining whether the controlled substances tax was intended to be a punishment, as opposed to when the tax becomes a punishment. If a dealer pays the controlled substances tax through the purchase of tax pay-

ment certificates in accordance with § 159.102, then the taxpayer obviously has been punished for double jeopardy purposes under *Stennett* because the taxpayer paid the tax. If the dealer does not pay the tax, but possesses, purchases, acquires, imports, manufactures, or produces a taxable substance, the dealer has not been punished if there is no State action with regard to the tax other than the statutory imposition. As noted in *Stennett*, the taxable event may not yet have come to the attention of law enforcement officers. That means that the taxable event would not have come to the attention of the comptroller, who is charged with making a tax assessment if the tax has not been paid. TEX. TAX CODE ANN. § 159.101(f). Therefore, there could not be any State action on the tax at that point. The question remains, when is a dealer punished by the controlled substances tax once law enforcement officials inform the comptroller that the dealer possessed a controlled substance without having paid the tax.

*United States v. Sanchez–Escareno*, 950 F.2d 193 (5th Cir.1991), *cert. denied*, 506 U.S. 841, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992), involved three cases in which defendants were arrested on separate occasions by United States Customs officials for attempting to smuggle marihuana into the United States. Each defendant was assessed a large fine and each one signed an agreement to pay the monetary penalty. None of the defendants paid the fine, and the government did not seek to collect on the promissory notes. The defendants were indicted for the criminal offenses. In all three cases the district judge dismissed the counts of importation of marihuana and possession of marihuana with intent to distribute, because the defendants were punished for double jeopardy purposes when they executed the promissory notes.

The Fifth Circuit Court of Appeals reversed. The court observed that the government had not attempted to take anything from the defendants and the defendants' property and liberty were unmolested and free from the exercise of sovereign power. *Id.* at 202. The court stated that the defendants were simply presumed to be personally obligated to the government, the holder of

the promissory notes, unless and until they interposed a defense sufficient to relieve them of their obligations. *Id.* The government had the defendants execute promissory notes to obtain evidence of their indebtedness. *Id.* The notes did not constitute payment or satisfaction of the obligation. *Id.* The Fifth Circuit concluded:

> Here, the government has yet to subject the defendants to trial at all or to exact any form of punishment whatsoever. Defendants are presently in the same position as someone who has been charged in two criminal proceedings, but has not yet been tried or punished in either. If the defendants actually pay the civil fines, then any subsequent criminal prosecution would be double jeopardy. *See Ex parte Lange,* 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1873) (when defendant "fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone"). Likewise, if the government chooses to go forward with its prosecution of the defendants, jeopardy would attach when the jury is empaneled and sworn, as it would in any criminal case.... Finally, if the government attempts to collect on the notes, jeopardy would attach when the court begins to hear evidence in that action.

*Id.* at 202–03.

The majority says three factors found significant by the Fifth Circuit in *Sanchez–Escareno* in concluding that the promissory notes did not cause jeopardy to attach are also present in the comptroller's notice of tax assessment in the instant case:

> In determining the assessment of the civil penalty did not cause jeopardy to attach, the Fifth Circuit found three factors particularly significant: (1) the promissory notes were simply *"prima facie* evidence" of the defendants' indebtedness; (2) the government had informed the defendants "of a possible procedure for side-stepping the payments of these assessments," and; (3) the promissory notes "anticipate[d] the need for future legal action to enforce their terms."

*Ward,* op. at 627. Similarly, the majority says here, the comptroller's notice "is only

'*prima facie* evidence' of appellant's indebtedness", the notice informed appellant of a way of side-stepping payment, and the notice "anticipate[d] the need for future legal action to enforce the terms." *Id.* But there are profound differences between notes in *Sanchez–Escareno* and a comptroller's determination under our Tax Code. While the majority is correct in recognizing that, like the promissory notes, the comptroller's determination is *prima facie* evidence of indebtedness in a suit pertaining thereto, unlike the promissory notes, the comptroller's determination need not be the subject of a suit in order for the comptroller to collect thereon. As to the majority's declaration that, like the promissory notes, the notice of determination "anticipated the need for future legal action to enforce its terms" and "contemplated that ... the State would be required to initiate additional legal action," this is just not so. *Id.* at 627, 631. While the notice, consistent with the controlling statutes, recognizes that legal action *may* take place, neither the notice nor the controlling statutes provide that legal action "need" take place or that the State "is required" to take further legal action in order for the comptroller to collect.

Contrary to the situation presented in *Sanchez–Escareno,* under the Texas tax statutes a civil action before a judge is not a necessary predicate to the comptroller's ability to collect the controlled substance tax, once the comptroller issues a determination. It is but one of several methods of collecting the tax. For example, the comptroller may freeze the dealer's assets and then levy upon the assets. TEX. TAX CODE ANN. § 111.021. Also, a lien for taxes attaches to the property of the dealer, and it continues until the taxes are paid. *Id.* at §§ 113.001 and 113.105. Although there are administrative and judicial remedies available to the dealer, these are unlike the situation in *Sanchez–Escareno* where *the government* had to file a civil action to enforce the promissory notes and thereby punish the defendants civilly.

Similarly, the procedures for collecting the controlled substances tax differ from civil forfeitures. For example, a Texas peace officer may seize contraband property that is subject to forfeiture. TEX.CRIM. PROC.CODE

ANN. art. 59.03. In order to acquire ownership of the property through forfeiture, the State must commence a forfeiture proceeding, which is tried in the same manner as other civil cases. *Id.* at art. 59.04 and 59.05. In contrast, for the State to collect the controlled substances tax there need not be any judicial proceeding nor any administrative proceeding. Moreover, any judicial proceeding is not necessarily brought by the State, although the State may seek that means of collecting the tax. TEX. TAX CODE ANN. §§ 111.202 and 111.010(a). A taxpayer may sue to challenge the tax or the validity of the lien. §§ 112.052 and 113.106.

Analogizing to other civil or criminal matters for double jeopardy purposes, the comptroller's determination is akin to a judgment. In other civil situations, a judgment is required as a basis for collection. In criminal situations, a judgment is required for punishment to occur. For collection of the controlled substances tax, all that is required is the comptroller's determination. The State may then collect the tax without having to initiate any administrative or judicial proceeding. Although the State may also sue to collect the tax, that is similar to a collection suit following a civil judgment. It is not a prerequisite to collecting the tax; it is simply another tool that is available to the State. Just as the comptroller's determination is analogous to a judgment, a petition for administrative redetermination is analogous to an appeal of a judgment. In reality, it is an appeal, as is a taxpayer's suit protesting the tax or challenging the validity of a lien. The majority says that if appellant had requested a hearing on the tax assessment and had obtained a "final judgment of liability" then jeopardy would have "undeniably" attached in the civil proceeding. *Ward,* op. at 630–631. But the government has no greater ability to collect the tax after a redetermination than if no redetermination hearing is ever requested.

Because a comptroller's determination is the functional equivalent of a judgment in other civil matters, for double jeopardy purposes a dealer who has not paid the controlled substances tax is punished when the comptroller assesses the tax by issuing a determination. Consequently, appellant was punished when the tax was assessed by the comptroller's determination. Assuming "a prior controlled substance tax assessment requires proof of the same elements as aggravated possession of marijuana,"[1] appellant's criminal prosecution should be barred by the Double Jeopardy Clause because he has already been "punished."

Relief should be granted.

BAIRD and OVERSTREET, JJ., join.

---

1. We are forced to make this assumption in this case, although I am not at all convinced that it is supportable under the law and the facts. *Cf. State v. Perez* 947 S.W.2d 268 (Tex.Crim.App. 1997). We also granted review of the following ground: whether a prior controlled substance tax assessment requires proof of the same elements as aggravated possession of marihuana. Unfortunately, this issue was not squarely raised before the Court of Appeals or addressed by that court; therefore this Court has nothing to review as to that issue and the majority properly dismisses that ground for review. Technically, the question of whether appellant is being punished twice for the same offense or the same conduct ought be addressed first. If we are not dealing with two separate offenses here, it doesn't matter at what point jeopardy attaches—that question becomes a mere academic exercise.